ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET AL., demandantes y recurrentes, *v.* COCA COLA BOTTLING COMPANY OF PUERTO RICO, ET AL., demandados y recurridos.

*Número:* R-83-279 *Resuelto:* 28 de marzo de 1984

---

198

Héctor Reichard De Cardona, Secretario de Justicia, Gloriana Ruiz Jiménez, Secretaria Auxiliar de Justicia, Oficina de

Asuntos Monopolísticos, *Irma Rodríguez Justiniano* y *José A. Santiago Martínez, Fiscales Especiales* de la Oficina de Asuntos Monopolísticos del Departamento de Justicia, abogados de los peticionarios; *José A. Trilla,* de *McConnell, Valdés & Kelley, Sifre, Griggs & Ruiz Suria,* abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La naturaleza y límites de las investigaciones y registros administrativos, con especial referencia a las facultades de la Oficina de Asuntos Monopolísticos del Departamento de Justicia (O.A.M.), constituyen el tema central de este caso. Examinemos los hechos para determinar las cuestiones precisas planteadas dentro de ese tema.

En la primavera de 1983 la O.A.M. solicitó y obtuvo *ex parte* del Tribunal Superior una orden para incautarse de ciertos documentos de Coca-Cola Bottling Co. y Caribbean Refrescos, Inc. La petición de la O.A.M. exponía que estaba en curso una investigación de la industria de manufactura y distribución de refrescos y sus derivados; que la O.A.M. tenía conocimiento de que las referidas corporaciones "están destruyendo evidencia sustancial y esencial a la investigación"; que la O.A.M. tenía "motivos fundados para creer que los demandados requeridos han violado los artículos 2, 3, 4, 7 y 8 de la Ley de Monopolios de Puerto Rico"; y que era vital obtener la información que se relaciona al margen(¹)

---

(¹) Los documentos solicitados, según se desprende de la petición, fueron los siguientes:

 a) Estados financieros mensuales (*Profit and Loss Statements*) de los años 1981, 1982 y 1983.

 b) Diarios personales u oficiales preparados por los Gerentes de Ventas y Mercadeo donde se consignen las transacciones de negocios realizadas y aprobadas diariamente por éstos.

 c) Los ajustes de crédito (*Journal Voucher*) que se encuentren en posesión de los representantes o empleados de las corporaciones requeridas o en su lugar de trabajo u oficina y en especial aquellos que se encuentren en el Departamento de Crédito.

 d) Todas las facturas para los años 1981, 82 y 83 donde se evidencien las compras de concentrados de Coca-Cola, $CO_2$ plásticos, latas, cajas de cartón y los plásticos que retienen las latas, botellas plásticas y de vidrio.

 e) Toda factura que para los años 1981, 82 y 83 evidencie los costos de distri-

para corroborar la existencia de tales violaciones. La O.A.M. no acompañó declaración jurada alguna en apoyo de su petición. En ningún momento ilustró al Tribunal sobre la prueba indicativa que se estaba destruyendo evidencia ni sobre sus "motivos fundados" para entender que se estaban violando los artículos mencionados de la Ley de Monopolios, Ley Núm. 77 de 25 de junio de 1964 (10 L.P.R.A. secs. 258, 259, 260, 263 y 264).

Al día siguiente de obtener la orden, a las 10:30 A.M., varios funcionarios de la O.A.M., acompañados de un alguacil, irrumpieron en las oficinas de la Coca-Cola en Carolina y de Caribbean Refrescos en Cidra. Conforme la declaración jurada del gerente de esta última corporación, el fiscal que dirigía el grupo requirió en forma agresiva y hostil que le indicasen dónde estaban los documentos relacionados en la orden. El gerente solicitó permiso para comunicarse con sus abogados. El fiscal le expresó que no podía consultar con abogados, que entregase inmediatamente los documentos. El gerente ordenó el comienzo de la entrega y aprovechó para comunicarse con su representación legal, la que le aconsejó que supliese únicamente fotocopias, mas no los originales, de los documentos pertinentes. Al enterar el gerente al fiscal de las instrucciones recibidas, éste montó en cólera y en forma

---

bución del producto manufacturado, la depreciación, los gastos administrativos, los costos del combustible utilizado por los vehículos que distribuyen el producto (gas y gasolina).

f) Todos los documentos, facturas, memoranda, cartas, comunicaciones o cualquier otra evidencia escrita donde se concedan descuentos (*allowance or rebate*) a sus clientes para los años de 1981 a 1983.

g) Todas las agendas de las reuniones de los Gerentes de Venta, Gerente de Mercadeo, Oficiales de la Corporación (presidente, vicepresidente, tesorero, secretario), Gerentes Generales; los *reading files* de todas las secretarias de los ejecutivos, especialmente de la de los señores Jaime I. del Valle, Luis Núñez, José Irizarry y Carlos Chimini, correspondiente a los años 1981, 82 y 83.

h) Todos los documentos, archivos, memoranda, facturas, agendas y costos relacionados con el negocio de *post-mix*.

i) Todo documento demostrativo de la comisión de una práctica ilícita de comercio.

destemplada le grito: "Macho, voy a llevar conmigo cualquier documento que yo quiero, tengo el poder, no me hace falta la orden del Juez, pero por la Ley de Monopolio [*sic*] debe entregar los originales que quiero, voy a ponerle en la nevera y no puede salir hasta el lunes próximo, hasta que el Tribunal regrese de vacaciones." El fiscal ordenó al alguacil que registrase al gerente y lo sacara del lugar. Los abogados de la compañía pudieron ser avisados y ellos se comunicaron con el juez, quien modificó su orden para aclarar que los originales no podían ser objeto de incautación, aunque sí de examen. Los documentos no examinados fueron colocados por las partes en un salón clausurado y sellado, donde aún permanecen.

El allanamiento de las oficinas de la Coca-Cola en Carolina provocó incidentes comparables. El fiscal a cargo de la operación le advirtió al abogado de la compañía que su negativa a permitir el acceso a la comunicación privilegiada entre abogado y cliente conllevaría su remoción o arresto.

Al poco tiempo las compañías acudieron al Tribunal Superior para que dejase sin efecto la orden *ex parte* y protegiese determinados derechos de las compañías. Éstas alegaron básicamente que no cuestionaban la autoridad de la O.A.M. para requerir la información y documentos no privilegiados que fuesen pertinentes a la investigación a realizarse, pero que objetaban la invasión de sus oficinas en violación de las disposiciones de la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado y de la Cuarta Enmienda de la Constitución de Estados Unidos.

Tras la vista correspondiente, el Tribunal determinó que cuando a la investigación se le imparte carácter criminal la O.A.M. no puede allanar establecimientos comerciales sin orden judicial, previa determinación de causa probable. "Si la investigación es una [*sic*] rutinaria que no es de carácter criminal es necesario que la OAM establezca un plan administrativo que siga unas normas de razonabilidad y unos criterios específicos y neutrales." El Tribunal concluyó

que si la O.A.M. deseaba llevar a cabo una investigación con carácter criminal tenía que hacer una determinación de causa probable "conforme lo dispone la Cuarta Enmienda de la Constitución Federal y el Artículo II, Sección 10 de nuestra Constitución . . .". El Tribunal resolvió también que la O.A.M. no le había puesto en condiciones de establecer la razonabilidad de la inspección, ni le informó sobre el plan administrativo que supuestamente la gobernaba ni sobre los criterios específicos y neutrales que el mismo seguía. Autorizó a la O.A.M. a proseguir con la investigación, "limitada al carácter rutinario no criminal de la misma, disponiéndose que esta Orden ni la original le confieren autoridad para efectuar registros y allanamientos de lugares, escritorios y archivos con el fin de incautarse de documentos no autorizados a menos que obtenga previamente el consentimiento de los demandados". El Tribunal añadió: "No podrá la OAM tampoco incautarse de los libros, documentos y escritos originales para llevárselos a sus oficinas con el fin de ser fotocopiados y devolverlos a menos que obtenga previamente el consentimiento de la parte demandada." La O.A.M. solicita la revisión de esta orden.

El caso plantea las cuestiones siguientes: ¿Es aplicable la garantía contra allanamientos, registros e incautaciones irrazonables a las investigaciones administrativas? ¿Existe distinción alguna entre el requerimiento de unos documentos y su incautación directa tras el registro del lugar concernido? De aplicarse la garantía constitucional, ¿ampara a los establecimientos comerciales? ¿Cuál es el procedimiento a emplearse? ¿Existen diferencias entre los registros administrativos y los de índole penal en lo que respecta a la determinación de causa probable? ¿Es suficiente para la expedición de una orden de registro la sospecha, sin más especificación, de que se está violando la ley? ¿Qué constituye un programa de inspecciones basado en criterios neutrales y específicos? ¿Puede utilizarse la causa probable menos rigurosa al examinar la validez de cualquier registro

administrativo o sólo para aquellos que son rutinarios y programados? ¿Es necesario utilizar la causa probable tradicional cuando el estatuto que autoriza el registro impone sanciones penales por violaciones al mismo?

■ Estas interrogantes se examinan a continuación dentro del contexto genérico de hechos en que se producen y a la luz exclusivamente de las normas expuestas en el Art. II, Sec. 10 de la Constitución del Estado Libre Asociado. Las referencias a casos y materiales estadounidenses en el curso de esta opinión se efectúan únicamente para fines comparativos o, cuando se trata de algunas sentencias del Tribunal Supremo de Estados Unidos relativas a la Enmienda Cuarta, para indicar el contenido mínimo de la Sec. 10.

■ 1. *Las investigaciones administrativas están sujetas, por norma general, a la garantía provista por el Art. II, Sec. 10 de la Constitución de Puerto Rico contra allanamientos, registros e incautaciones irrazonables.*

No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

. . . . . . . .

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Antes de examinar detenidamente el significado de esta sección, veamos el tratamiento de este problema por el Tribunal Supremo de Estados Unidos. Éste ha estado sujeto a movimientos pendulares. En *Frank* v. *Maryland*, 359 U.S. 360 (1959), se resolvió que el propósito de la Cuarta Enmienda era escudar a los ciudadanos únicamente contra registros encaminados a ocupar evidencia a ser utilizada en procesos penales. Los registros administrativos sólo afectaban la periferia de los intereses protegidos por la disposición

constitucional. En *Camara* v. *Municipal Court*, 387 U.S. 523 (1967), se derogó a *Frank*, resolviéndose que, en ausencia de circunstancias apremiantes, los registros administrativos requieren el consentimiento de la persona afectada o una orden judicial debidamente emitida. *See* v. *City of Seattle*, 387 U.S. 541 (1967), expandió la norma de *Camara* a otros géneros de situaciones. Pocos años más tarde, en *Colonnade Corp.* v. *United States*, 397 U.S. 72 (1970) y *United States* v. *Biswell*, 406 U.S. 311 (1972), *Camara* y *See*, supra, sufrieron considerable erosión, bamboleándose su norma. La regla adquirió nueva vitalidad, no obstante, en *Almeida-Sánchez* v. *United States*, 413 U.S. 266 (1973); *G. M. Leasing Corp.* v. *United States*, 429 U.S. 338 (1977); y *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307 (1978). Véase: M. Lacek, *Camara, See, and Their Progeny: Another Look at Administrative Inspections Under the Fourth Amendment*, 15 Colum. J. L. & Soc. Probs. 61 (1979); M. Rothstein and L. Rothstein, *Administrative Searches and Seizures: What Happened to Camara and See?*, 50 Wash. L. Rev. 341 (1975).

En Puerto Rico hemos expresado que la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado ampara a los ciudadanos contra citaciones administrativas irrazonables. *E.L.A.* v. *P.R. Tel. Co.*, 114 D.P.R. 394 (1983). En *Pueblo* v. *Rodríguez*, 107 D.P.R. 804 (1978), examinamos la entrada sin orden judicial de agentes de Rentas Internas al negocio del apelante, donde se vendían bebidas alcohólicas sin licencia para ello. El Art. 101 de la Ley de Bebidas Núm. 143 de 30 de junio de 1969, permitía al Secretario o sus designados la entrada "en cualquier destilería, fábrica, planta, establecimiento comercial o almacén sujeto a las disposiciones de esta ley para realizar investigaciones relacionadas con esta ley". El acusado había consentido a la inspección y confirmamos la condena. Afirmamos, no obstante, que "esa facultad concedida al Secretario por el estatuto no es una ilimitada e irrestricta. Si el dueño o su representante objetan, no procede hacer uso de la fuerza para llevar a cabo la inspec-

ción". *Pueblo* v. *Rodríguez*, supra, págs. 807–808. En *Comisionado de Seguros* v. *Bradley*, 98 D.P.R. 21 (1969); *Cooperativa Cafeteros P.R.* v. *Colón Torres*, 84 D.P.R. 278 (1961); y *Srio. de Hacienda* v. *Tribl. Superior*, 81 D.P.R. 666 (1960), el énfasis recayó más bien en el alcance de la investigación administrativa. No discutimos la cuestión referente a la aplicación de la garantía constitucional contra allanamientos, registros e incautaciones irrazonables.

En el caso de autos se presenta de lleno esta última cuestión. Resolvemos que, sujeto a contadas excepciones de alcance rigurosamente definido, la garantía contenida en la Sec. 10 del Art. II de la Constitución de Puerto Rico cubre tanto los registros administrativos como los penales. La regla general es, en consecuencia, que todo registro, allanamiento o incautación que se realice, no importa su índole penal o administrativa, es irrazonable per se de llevarse a cabo sin orden judicial previa. Los tres objetivos históricos que persigue la garantía: proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión, *Pueblo* v. *Dolce*, 105 D.P.R. 422, 429–431 (1976), se justifican en uno u otro tipo de registro. Según se expresó en *Camara*, supra, pág. 530:

> . . . we cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely "peripheral." It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.

El peso particular de los intereses públicos y privados en conflicto puede variar según los hechos. Circunstancias de emergencia pueden provocar excepciones a la regla general. Para ejemplos en otras jurisdicciones de algunas excepciones admitidas, véanse: *North American Storage Co.* v. *Chicago*, 211 U.S. 306 (1908) (incautación de alimentos contaminados); *Jacobson* v. *Massachusetts*, 197 U.S. 11 (1905)

(vacunación compulsoria); *Kroplin* v. *Traux*, 165 N.E. 498 (Ohio 1929) (destrucción sumaria de ganado enfermo).

■ La particularidad de la autorización para el registro concedida por un estatuto no impide per se la aplicación de la regla general. En *Marshall*, supra, el Art. 8(a) de la *Occupational Safety and Health Act* facultaba a los agentes del Secretario del Trabajo a allanar cualquier establecimiento sujeto a las disposiciones de la ley. El Tribunal Supremo de Estados Unidos resolvió que inspecciones fundadas en tal disposición, sin autorización judicial, violaban la Cuarta Enmienda de la Constitución.

■ Consideramos que *Marshall* tiene valor persuasivo en esta jurisdicción en situaciones análogas. La regla general prevalece, a menos que se consienta al registro, directa o indirectamente, o circunstancias de emergencia requieran lo contrario y el peso de los intereses en conflicto exija una solución distinta. La simple autorización del registro por la Asamblea Legislativa no obvia la regla general. Valga señalar también que la deseabilidad de actuar por sorpresa no basta para detener la aplicación de la regla general. La obtención de una orden judicial *ex parte* le permite al gobierno preservar el elemento de sorpresa. Véase: *Marshall*, supra, pág. 316.

Más adelante se examinan el estatuto que regula las actividades de la O.A.M. y la relación de los hechos de este caso con la regla general.

■ 2. *El requerimiento y la incautación directa de documentos son conceptos distintos.*

■ En *E.L.A.* v. *P.R. Tel. Co.*, supra, así como en *P.N.P.* v. *Tribunal Electoral*, 104 D.P.R. 741 (1976); *Cooperativa Cafeteros P.R. y Comisionado de Seguros*, supra, hablamos del ámbito de las investigaciones admistrativas. Expresamos en *P.R. Tel. Co.* que la investigación debe estar dentro de la autoridad de la agencia, que el requerimiento no debe ser demasiado indefinido y que la información solicitada

debe ser pertinente a la investigación. La O.A.M., en su alegato ante este foro, trata este caso básicamente como si el planteamiento central fuese determinar el alcance de la investigación. Ese problema está presente, pero la cuestión principal en este caso no es tanto el alcance de la investigación como el método de conducirla. Este Tribunal no ha tenido ocasión de enfrentarse de lleno a este segundo problema.

 3. *La garantía contra los allanamientos, registros e incautaciones irrazonables del Art. II, Sec. 10 de la Constitución de Puerto Rico se extiende a los establecimientos comerciales.*

Antes de comenzar a discutir el problema del método de las investigaciones administrativas, de las condiciones del procedimiento para su ejercicio, debe precisarse si la garantía constitucional citada protege a los establecimientos comerciales. La contestación en Estados Unidos es que sí. Las corporaciones están protegidas por las disposiciones de la Cuarta Enmienda. *Hale* v. *Henkel*, 201 U.S. 43 (1906); *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920) (Holmes); *Go-Bart Co.* v. *United States*, 282 U.S. 344 (1931). Los establecimientos comerciales, sean o no propiedad de corporaciones, pueden invocar la Cuarta Enmienda. *See* v. *City of Seattle*, supra, pág. 543. En *See*, al sostener el Tribunal Supremo de Estados Unidos la negativa a que se inspeccionase sin orden judicial por el Departamento de Bomberos de Seattle un almacén cerrado, se rechazó una vez más el argumento de que tan sólo las residencias están amparadas por la referida disposición constitucional.

En cuanto al aspecto que nos ocupa en esta sección, *See* no enuncia un principio investido a lo sumo de valor persuasivo, aceptable o no por las cortes estatales de última instancia —y aquellas que ocupan una posición comparable— sino que define el ámbito mínimo de la garantía constitucional envuelta. En consecuencia resolvemos que la regla general consagrada en el Art. II, Sec. 10 de la Constitución de Puerto Rico se aplica a los establecimientos comerciales.

4. *Las condiciones para la expedición judicial de órdenes de registro administrativo.*

 a) *Los requisitos del estatuto.*

▇▇▇▇ Una orden judicial de allanamiento, registro e incautación tiene naturalmente que cumplir, en primer término, con las condiciones que imponga la Asamblea Legislativa. El Art. 15 de la Ley de Monopolios, 10 L.P.R.A. sec. 271, provee en parte:

> (1) Se autoriza al Secretario de Justicia a designar como fiscales especiales al Secretario Auxiliar y a los abogados adscritos a la Oficina de Asuntos Monopolísticos que más adelante se crea. Cada uno de dichos funcionarios así designado tendrá todas las atribuciones y facultades de un fiscal, pudiendo actuar como tal ante cualquier Sala del Tribunal Superior en cualquier caso criminal en que se impute la violación de cualesquiera de las disposiciones de este Capítulo.

> (2) Toda persona citada como testigo por cualquiera de dichos abogados estará obligada a comparecer y a testificar, o a presentar libros, archivos, correspondencia[,] documentos y todo otro tipo de evidencia que se le requiera en cualquier investigación, procedimiento, o proceso criminal relacionado con este Capítulo. A cualquier persona podrá requerírsele, en adición a, o en sustitución de, su comparecencia personal, que ponga a disposición de los funcionarios del Departamento de Justicia, en el local en que dicha persona mantenga su negocio, para inspección, copia o reproducción, cualquier documentación u otra evidencia de la clase descrita. El material así obtenido por los abogados del Departamento de Justicia podrá utilizarse por dicho Departamento en cualquier procedimiento autorizado por este Capítulo.

El Art. 16 (10 L.P.R.A. sec. 272) dispone en parte a su vez:

> (1) Compilar y ordenar información sobre las prácticas competitivas en el mercado de Puerto Rico y sobre la relación de éste con los mercados de Estados Unidos y del extranjero, con el fin de determinar cuáles prácticas conllevan restricciones al libre comercio y propenden a la indebida concentración del poder económico, y requerir de cualquier persona, según se define dicho término en este Capítulo, aquellos informes que se consideren necesarios a tales fines, debiéndose

prescribir por reglamento los períodos que cubrirán dichos informes, así como la forma y el contenido de los mismos. Dichos informes podrán requerir, no sólo información interna con relación a la persona afectada, sino también información pertinente a las relaciones comerciales de ésta con otras personas. El dejar de rendir un informe dentro del término fijado reglamentariamente constituirá delito menos grave y la persona que incurriere en el mismo podrá ser castigada con una multa no mayor de mil (1,000) dólares o cárcel por un término no mayor de noventa (90) días o ambas penas. En el caso de una corporación la multa mínima será de quinientos (500) dólares.

(2) Llevar a cabo las investigaciones necesarias y tomar la acción correspondiente para asegurarse del cumplimiento de sus propias órdenes y las de los tribunales de justicia, dictadas al amparo del presente Capítulo.

Se habrá advertido que el Art. 15(2) expresa que "A cualquier persona podrá requerírsele . . . que ponga a disposición de los funcionarios del Departamento de Justicia, en el local en que dicha persona mantenga su negocio, para inspección, copia o reproducción, cualquier documentación u otra evidencia de la clase descrita". Esta autorización para el requerimiento de prueba no puede interpretarse como un permiso para irrumpir sin orden judicial válida en un establecimiento comercial no abierto al público. De interpretarse así, la constitucionalidad del estatuto peligraría seriamente. *Marshall,* supra. Preferimos la interpretación que obvia el problema constitucional.

Obsérvese también que la disposición a que nos hemos referido faculta a requerir documentación, mas no especifica el procedimiento para ello. Tal procedimiento tampoco se consigna en otras partes de los Arts. 15 y 16 citados. Nuestro estatuto contrasta con la legislación federal sobre la materia. Ésta define claramente los pasos a cumplirse por el Departamento de Justicia. 15 U.S.C. sec. 1311 *et seq.*

█ El Departamento de Justicia de Estados Unidos no puede irrumpir sin permiso en una residencia o establecimiento comercial y requerir allí la información que, a su

solo arbitrio, estime necesaria para una investigación de naturaleza civil. La legislación exige que se le sirva primero copia del requerimiento a la parte interesada. 15 U.S.C. sec. 1312. El requerimiento debe ser específico y no podrá vulnerar las normas aplicables a las citaciones. Ibíd. Si la persona concernida rehúsa entregar la información, el Departamento de Justicia únicamente puede instar demanda en corte, como se hizo en *E.L.A.* v. *P.R. Tel. Co.*, supra, para poner en vigor una orden. 15 U.S.C. sec. 1314. Sobre la expedición *ex parte* de órdenes, véase: W. R. LaFave, *Search & Seizure—A Treatise on the Fourth Amendment*, St. Paul, Minn., West Publishing Co., 1978, Vol. 3, pág. 196 *et seq.* Cuando el estatuto que autoriza la inspección no prescribe el procedimiento para realizarla, las reglas restrictivas que normalmente impone la garantía contra los allanamientos, registros e incautaciones irrazonables tienen, a fortiori, que aplicarse. Véase: *Donovan* v. *Dewey*, 452 U.S. 594 (1981). Veamos esas reglas.

 b) *La determinación de causa probable. En el caso de registros administrativos el estándar para medir la existencia de causa probable es diferente.*

En ausencia de consentimiento o circunstancias apremiantes, como hemos indicado, un registro administrativo no puede realizarse sin orden judicial fundada en causa probable. Puede concebirse razonablemente que el concepto tradicional de causa probable en los procedimientos administrativos es idéntico o, al menos, análogo al exigible en el caso de los registros con finalidad penal. No obstante, la tendencia más vigorosa en Estados Unidos es a distinguir entre ambos. *Camara* v. *Municipal Court*; *See* v. *City of Seattle*; y *Marshall* v. *Barlow's, Inc.*, supra; *Michigan* v. *Tyler*, 436 U.S. 499 (1978). Nos inclinamos a pensar, y así lo resolvemos, que existen diferencias entre los dos tipos de registro, y aun entre clases de registros administrativos entre sí.

La relación entre los valores concernidos puede variar de contexto a contexto. Consideramos que existen

diferencias entre el procedimiento criminal y el administrativo de orden civil que son de tal índole que en determinadas circunstancias justifican en el contexto administrativo una visión más flexible de la garantía constitucional en lo que respecta a la forma de medir la causa probable. Por ejemplo, los registros policíacos se efectúan por funcionarios armados. El registro de este género se percibe públicamente como algo más ofensivo que una inspección administrativa. El daño potencial a la reputación es mayor. El grado de intrusión con la intimidad y dignidad del intervenido es, en suma, generalmente más intenso en los registros penales que en los administrativos. Esta distinción justifica estándares diferentes, menos rigurosos, para fijar la naturaleza de la prueba necesaria para establecer causa probable en casos de registros administrativos. Mientras estos adquieran más visos de carácter penal, sin embargo, más se acercarán los dos géneros de registro. Véase: *Michigan* v. *Tyler*, supra. Si el objetivo primario de un registro administrativo es obtener evidencia para un proceso penal, deberá cumplirse con las normas tradicionales exigibles en las causas de naturaleza criminal. Del otro lado, si en el curso de una inspección civil *bona fide* se descubre prueba utilizable en un proceso penal, ello de por sí no invalidará el registro.

▇▇ Las inspecciones o investigaciones rutinarias y programadas, basadas en principios neutros, son las que más claramente validan el empleo de la causa probable no tradicional. Se cumple así más fácilmente el propósito de escudar a la ciudadanía contra actuaciones gubernamentales arbitrarias. De ahí que en la minoría de las jurisdicciones se estime que cuando la investigación administrativa se inicie por motivo de una querella o de una confidencia deberá utilizarse un tipo de causa probable más parecido al que se exige en el procedimiento penal. R. Rader, *OSHA Warrants and Administrative Probable Cause*, 33 Baylor L. Rev. 97, 104–108 (1981); Comentario, *Fourth Amendment Implications of Warrantless Occupational Safety and Health*

*Act Inspections*, 82 Dick. L. Rev. 773, 796 (1978); Rothstein y Rothstein, *supra*, pág. 348; Nota, *Administrative Search Warrants*, 58 Minn. L. Rev. 607, 641–642 (1974). Véanse, además: *Marshall* v. *Central Mine Equipment Co.*, 608 F.2d 719, 720–721 (8th Cir. 1979); *Matter of Brickner*, 453 F. Supp. 91 (E.D. Wis. 1978); *United States* v. *Anile*, 352 F. Supp. 14 (N.D. W. Va. 1973). La posición mayoritaria, con la que coincidimos, se funda en la convicción de que el organismo administrativo no debe ser penalizado, mediante la exigencia de un grado de causa probable mayor, por el simple hecho de que se la ha advertido de la necesidad de inspeccionar determinado establecimiento en particular. Para estos estudiosos del problema, la dicotomía entre registros programados y no programados carece de fundamento. M. Rothstein, *OSHA Inspections after Marshall v. Barlow's, Inc.*, 1979 Duke L.J. 63, 91 (1979); Lacek, *supra*, págs. 93–96; Nota, *The Fourth Amendment and Housing Inspections*, 77 Yale L.J. 521, 533 (1968). Véanse, además: *United States* v. *Acklen*, 690 F.2d 70, 73 (6th Cir. 1982); *Burkart Randall Div. of Textron, Inc.* v. *Marshall*, 625 F.2d 1313, 1317 (7th Cir. 1980); *Matter of Searches and Seizures Conducted, etc.*, 665 F.2d 775 (7th Cir. 1981); *In the matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1338 (7th Cir. 1979); *United States* v. *Consolidation Coal Co.*, 560 F.2d 214, 218 (6th Cir. 1977); *United States* v. *Goldfine*, 538 F.2d 815, 819 (9th Cir. 1976); *United States* v. *Blanchard*, 495 F.2d 1329, 1330–1331 (1st Cir. 1974).

 Consideramos que la insistencia de algunos sectores de opinión en que los registros administrativos no programados deben acercarse lo más posible, si no unirse, al concepto de causa probable tradicionalmente empleado en los casos penales no responde adecuadamente a las realidades y valores envueltos. Los procesos administrativos son demasiado variados y complejos para encajarlos en un número reducido de moldes. Es cierto que las clasificaciones sencillas ejercen poderosa atracción. Facilitan la determinación y

aplicación del derecho, objetivo loable. Sin embargo, el logro de ese propósito no debe hacerse a costa de otros objetivos igualmente meritorios. Lo cierto es que este problema presenta una gran diversidad de situaciones en que el peso de los intereses públicos y privados fluctúa. Distintas categorías de casos exigen formas diferentes de armonizar los intereses en juego. La naturaleza del registro, su periodicidad y razón para llevarse a cabo, son sólo algunos de los factores a considerarse. Exigir que se cumpla prácticamente con la causa probable tradicional en todo caso en que el registro no sea rutinario o responda a una queja, puede dificultar innecesariamente los procesos administrativos. Pueden erigirse vallas adecuadas contra la arbitrariedad y protegerse debidamente la intimidad de personas y empresas, a la par que se distingue entre géneros de situaciones.

Por el mismo motivo rechazamos la posición de algunas cortes y comentaristas que predican el empleo de la causa probable tradicional cuando el estatuto en que se funda el registro impone sanciones penales. Esta es otra norma excesivamente mecánica. Compárese: Comentario, *Administrative Inspection Procedures under the Fourth Amendment—Administrative Probable Cause*, 32 Alb. L. Rev. 155, 175–176 (1967), con *United States* v. *Jamieson-McKames Pharmaceuticals*, 651 F.2d 532 (8th Cir. 1981), *cert.* denegado: 455 U.S. 1016 (1982); y *United States* v. *Prendergast*, 585 F.2d 69 (3rd Cir. 1978).

■ La naturaleza, alcance y onerosidad de la intervención gubernamental son elementos más realistas a sopesar. La guía esencial es demostrar al juzgador la ausencia de arbitrariedad en la selección del lugar a inspeccionar y la razonabilidad del registro.

A la luz de lo anterior, examinemos el grado de prueba requerido para el establecimiento en situaciones como la de autos de causa probable para un registro.

c) *Los elementos de la causa probable en casos como el presente.*

Aunque hemos resuelto que el recibo de una queja o confidencia no resulta mecánicamente en que haya que emplear el criterio penal o algo parecido a él, tampoco podrá establecerse causa probable para un registro administrativo con la simple afirmación por la agencia, como sucedió aquí, que "tiene motivos fundados para creer que los demandados requeridos han violado los artículos 2, 3, 4, 7 y 8 de la Ley de Monopolios de Puerto Rico". En otras jurisdicciones está firmemente sentado que expresiones de tal generalidad no bastan para demostrar la razonabilidad de la intervención. *In the matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, supra, pág. 1339; *Weyerhaeuser Co.* v. *Marshall*, 452 F. Supp. 1375 (E.D. Wis. 1978); *In the matter of Establishment Inspection of Northwest Airlines, Inc.*, 587 F.2d 12 (7th Cir. 1978). En situaciones tales el organismo administrativo debe explicar en qué se basan esos "motivos fundados"; cuál fue la información precisa recibida, aunque no la identidad de la fuente, si es que ésta debe razonablemente mantenerse en el anonimato; la naturaleza detallada de la supuesta violación y la fecha de su ocurrencia hasta donde alcance la información del organismo administrativo; la fecha en que se enteró la agencia de la información alegada. Se ilustrará al juez, además, sobre el día, la hora, el objetivo, si civil o penal, y el alcance de la inspección a realizarse, así como sobre la pertinencia de la información específica solicitada y la autorización estatutaria para requerirla. Véanse: *In the matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, supra; *In the matter of Establishment Inspection of Federal Clearing Die Casting Co.*, 484 F. Supp. 215 (N.D. Ill. 1980); *Marshall* v. *North American Car Co.*, 626 F.2d 320 (3rd Cir. 1980); *Empire Steel Mfg. Co.* v. *Marshall*, 437 F. Supp. 873 (D. Mont. 1977).

El requisito constitucional de la causa probable para la autorización judicial de allanamientos, registros e

incautaciones existe, como hemos indicado, entre otras razones, para interponer el juicio ponderado e imparcial de un magistrado entre el arbitrio de los administradores y la ciudadanía. Las solicitudes para la autorización de registros no pueden ser peticiones a los magistrados para que efectúen, sin base suficiente, actos de fe. Tales solicitudes tienen que fundarse en hechos concretos, particularizados, que le permitan al juez desempeñar adecuadamente su delicada función. Si la inspección corresponde a un programa, ésta debe describirse y la solicitud explicar cómo el registro requerido forma parte de él, *In the matter of Establishment Inspection of Northwest Airlines, Inc.*, supra, pág. 15. Los criterios neutros utilizados para seleccionar el local a inspeccionarse deben señalarse también. *In the matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, supra, pág. 1341. La piedra de toque, reiteramos, viene a ser esencialmente la presentación al juez de los hechos demostrativos de la neutralidad y objetividad administrativas al seleccionar el establecimiento a inspeccionarse y de la razonabilidad del registro dentro de las circunstancias que se especifiquen en la solicitud.

La solicitud de registro presentada en el caso de autos incumple varios de los requisitos expuestos. La sensible omisión de toda exposición fáctica de los "motivos fundados" en que se basa la solicitud basta para su rechazo.

Los principios reseñados en esta opinión se refieren a investigaciones de carácter civil. De interesarle a la O.A.M. efectuar una investigación criminal deberá cumplir en vez con los criterios tradicionales, mucho más rigurosos, para ese género de casos. Reafirmamos, del otro lado, en todos sus aspectos, nuestras expresiones en *P.R. Tel. Co.*, supra, sobre las amplias facultades investigativas de la O.A.M. Las compañías y personas afectadas tienen la obligación de suministrar toda la información legalmente requerida. De cuestionarse la legalidad de una orden de registro o de un simple requerimiento, el tribunal de instancia podrá dictar las

medidas provisionales necesarias para asegurar la eficacia de la investigación.

No podemos, por último, pasar por alto la forma en que se intentó conducir los registros en este caso. A tal efecto, hacemos nuestras las acertadas palabras del ilustrado juez de instancia:

Por último, reprochamos la actitud desplegada por los funcionarios de la OAM durante las visitas a los respectivos lugares de negocios de las compañías siendo investigadas. Si bien la ley establece como delitos el rehusar contestar alguna pregunta, sin excusa legal, y negarse a presentar o a permitir la inspección de libros, documentos y otros escritos, no es menos cierto que las corporaciones en cuestión tienen ciertos derechos y garantías constitucionales, y que no es distintivo de una sociedad democrática que se nutre en el respeto a la ley el intentar forzarles a renunciar a tales derechos mediante la constante amenaza de encarcelamiento e incluso del uso de un amplio poder aun cuando ya éste había sido limitado por orden del Tribunal.

Por las razones expuestas *se anula la orden de registro expedida. Como medida provisoria, se mantendrán sellados, como hasta ahora, los documentos no examinados por la O.A.M. hasta que el tribunal de instancia disponga otra cosa. La O.A.M. podrá, en cualquier momento, presentar en instancia otra petición para la autorización del registro conforme a las normas reseñadas aquí.*

Los Jueces Asociados Señores Torres Rigual, Negrón García y Rebollo López concurren en el resultado sin opinión.