# 2003 DTA 109

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL III DE ARECIBO/UTUADO**

EL PUEBLO DE PUERTO RICO
Peticionario

v.

TANIA SOTO RODRIGUEZ
Recurrida

Núm. KLCE-2003-00741

<span style="background:black"> </span>

San Juan, Puerto Rico, a 27 de junio de 2003

Panel integrado por su Presidente, el Juez Soler Aquino,
y los Jueces Colón Birriel y Escribano Medina

Escribano Medina, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Comparece ante nos el Procurador General, en adelante el peticionario, solicitando la revocación de una resolución emitida el 9 de mayo de 2003 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (Hon. Juan Reyes Caraballo, J.) en adelante el Tribunal. Mediante ésta se declaró con lugar la solicitud de supresión de evidencia sometida por la defensa de acuerdo con la opinión dictada por el Tribunal Supremo en el caso normativo *Pueblo v. Bonilla Bonilla,* **99 J.T.S. 157.** Nos toca resolver si erró el Tribunal al suprimir la

evidencia entregada por la recurrida, mientras visitaba una institución penal.

# I

El 23 de enero de 2003, el Ministerio Fiscal formuló tres cargos criminales contra la recurrida Tania I. Soto Rodríguez, se le imputó infracción al Artículo 234 del Código Penal y al Artículo 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401. Se procedió con los cargos, ya que alegadamente la acusada intentó introducir o tenía en su poder con la intención de introducir a un confinado en la Cárcel de Distrito de Arecibo las sustancias controladas conocidas como heroína y marihuana.

La defensa posteriormente presentó una "*Moción en Solicitud de Supresión de Evidencia*". Alegó la defensa que "*la acusada fue objeto de una intervención ilegal, pues no había motivos fundados ni se corroboró evidencia alguna. Alegó además que no se cumplió con el Reglamento sobre visitas a la institución y el procedimiento de registros al desnudo, por lo que "El registro al desnudo de la acusada está viciado ab initio*". En la vista para dilucidar la moción, compareció la acusada en persona y representada por su abogado. El ministerio público compareció representado por el Fiscal Francisco Viera Tirado, presentó el testimonio de tres oficiales; la Agente Especial Haydeé Torres Ortega del Negociado de Investigaciones Especiales en San Juan, Luis Jové Ramos Policía de PR, K-9, Arecibo y el Teniente Héctor Orsini Heredia, encargado de la cárcel de Distrito de Arecibo.

Según los testimonios de los agentes en la vista y consta en los autos, el 4 de diciembre de 2002, la Agente Torres recibió una confidencia al efecto de que la acusada intentaría introducir sustancias controladas a la institución carcelaria durante las horas de visita del día 7 de diciembre de 2002. En vista de esta confidencia, la agente Torres se comunicó con el Teniente Orsini, encargado de la cárcel, y acordaron reunirse durante la mañana del día 7 de diciembre con la Policía de Puerto Rico K-9 (Perros entrenados en la Detección de Drogas) con el propósito de inspeccionar a los visitantes para detectar sustancias controladas en el área de visita de la institución carcelaria en la fecha señalada. A tal efecto, el Agente Luis Jové Ramos de la Policía de PR, pasó con su can (K-9) al área de los visitantes donde se encontraba la acusada entre un grupo de 10 a 15 personas. A éstos se les advirtió que se iba a realizar un registro de paquetes y personas. El Agente Jove activó el can para que olfateara; al llegar frente a la acusada empieza a olfatear en el área de los genitales y empieza a ladrar. Ese hecho "*marcó*" a la acusada, lo que indica que ella posee sustancias controladas o rastros de éstas. El Teniente Orsini solicitó a la acusada que lo acompañase, y la separó de los demás visitantes llevándola con la Agente Torres y la Agente Awilda Arroyo. Cabe señalar que entre los exhibits que estipularon las partes y según el testimonio de la Agente Torres, a la entrada de la cárcel figura un rótulo que lee: "*Toda persona que entre a la institución está sujeta a un registro físico, así como paquetes y demás artículos que traigan consigo*". La Agente Torres, luego de identificarse, le indicó a la recurrida que el can la marcó como que alegadamente tenía sustancias controladas o rastro de éstas. La Agente Torres procedió a darle a la acusada las advertencias legales; que tenía derecho a permanecer callada y a tener un abogado y le solicitó su cooperación en la investigación. La acusada se puso nerviosa, pero le indicó que iba a cooperar. La Agente Torres le preguntó si tiene algo consigo y la acusada le contestó afirmativamente e indicó que lo tenía en su ropa interior. Luego, a requerimiento de la agente, la acusada procedió a levantar su ropa interior de donde sacó una envoltura cuyo contenido aparentaba ser marihuana. Así las cosas, los oficiales solicitaron un consentimiento por escrito a la acusada Tania Soto para llevar a cabo un posterior registro al desnudo. La recurrida firmó el documento provisto por la Administración de Corrección y las agentes procedieron con el registro al desnudo resultando éste negativo. La prueba de campo de la evidencia entregada voluntariamente por la recurrida arrojó un resultado positivo a marihuana y a heroína.

Ante esos hechos es que el Tribunal de Instancia decretó la supresión de evidencia.

Inconforme, el Procurador recurre ante nos y presenta el siguiente señalamiento de error:

*"Incidió el foro a quo al decretar la supresión de la evidencia legalmente incautada por el Estado en el presente caso, toda vez que la situación de hechos es distinguible de la norma pautada por el Tribunal Supremo en la opinión normativa de Pueblo v. Bonilla Bonilla, supra, porque, a diferencia de lo ocurrido en **Bonilla**, en este caso: (i) existían motivos fundados concretos y específicos para intervenir con la imputada (confidencia corroborada por el olfato de un can que 'marcó' a la imputada), y (ii) la entrega de la evidencia suprimida fue producto del consentimiento de la imputada, el cual fue prestado antes de que la imputada fuera sometida al registro y antes de que siquiera se le informara que se registraría su persona."*

Luego de Examinar los planteamientos de ambas partes y el derecho aplicable, pasamos a resolver.

## II

La Cuarta Enmienda de la Constitución de los Estados Unidos y la Sección 10 de la Carta de Derechos la Constitución del Estado Libre Asociado de Puerto Rico consagran la protección contra registro, detención o incautación irrazonable. Dichas disposiciones protegen a la ciudadanía contra actuaciones irrazonables del Estado. Se interpone la figura neutral del juez entre el interés del gobierno y el interés del ciudadano y además se requiere causa probable basada en juramento o afirmación para expedir una orden de arresto o registro. El Artículo II, Sec. 10 dispone textualmente que la *"evidencia obtenida en violación de esta sección será inadmisible en los tribunales"*. Esta disposición pretende evitar que el Estado se beneficie de evidencia obtenida ilegalmente. El criterio rector de la protección bajo la Cuarta Enmienda y la Constitución del ELA es la razonabilidad. En el caso *ELA v. Coca Cola Bottling Co*, 115 D.P.R. 197, el Tribunal Supremo de Puerto Rico señaló, *"que los tres objetivos históricos que persigue la garantía son: proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión"*.

Es necesario señalar que no existe prohibición constitucional contra registro, incautación o arresto sin orden; la orden judicial es requisito, salvo que sea razonable registrar sin la orden; Chiesa Aponte, Ernesto, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Editorial Forum, Vol. I, pág. 281.

Los registros sin orden se presumen irrazonables; corresponde entonces al Estado demostrar la razonabilidad de la intervención realizada sin orden judicial. El ministerio fiscal tiene la obligación de presentar prueba para rebatir la presunción de invalidez y establecer la legalidad y razonabilidad de la intervención. *Pueblo v. Santiago Alicea*, 138 D.P.R. 230. La razonabilidad de una intervención gubernamental se determina balanceando los intereses presentes a la luz de la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada, *Pueblo v. Ferreira Morales*, **98 J.T.S. 150**. La protección constitucional contra registros, incautaciones y allanamientos irrazonables cobija tanto a registros de naturaleza criminal como a registros administrativos. *ELA v. Coca Cola Bott. Co., supra.*

La protección constitucional contra registros y allanamientos irrazonables no es absoluta. La jurisprudencia interpretativa ha reconocido ciertas excepciones bajo las cuales se sostiene el registro y la incautación sin orden. Cabe mencionar las siguientes: evidencia a plena vista, *Pueblo v. Dolce*, 105 D.P.R. 170 (1976); evidencia arrojada o abandonada, *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979); evidencia obtenida en el transcurso de una persecución, *Pueblo v. Riscard*, 95 D.P.R. 405 (1967); evidencia obtenida en un registro administrativo en una actividad altamente reglamentada por el Estado, *E.L.A. v. Coca Cola, supra*, cuando ha mediado consentimiento para el registro, *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988), *Pueblo en interés del menor N.O.R.* 136 D.P. R. 949 (1994) y en el registro de emergencia, *Pueblo v. Rivera Collazo*, 122 D.P.R. 408 (1988).

Se considera legalmente válido un registro sin orden si ha mediado un consentimiento válido para llevarlo a cabo, *Pueblo v. Narváez Cruz*, 121 D.P.R. 429, pág. 436. Esta excepción *"se configura en virtud de la facultad que posee el titular de la protección constitucional para renunciarla"*, *Pueblo v. Santiago Alicea I*, 138 D.P.R. 230, 235-236, dicha renuncia puede ser implícita o expresa, pero se requiere que sea voluntaria y libre de toda

coacción. *Pueblo v. Acevedo Escobar,* 112 D.P.R. 770, 776, 777 (1982). *"No se requiere que el titular del derecho a la intimidad, que asiste al registro, esté consciente expresamente de que tiene el derecho a no consentir. Lo decisivo es que una vez considerada la totalidad de las circunstancias, la renuncia al derecho -el consentimiento al registro-, sea voluntaria."* Chiesa Aponte, Ernesto, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Editorial Forum, Vol. I, págs. 424-425.

La voluntariedad de la renuncia se determinará a la luz de la totalidad de las circunstancias, no basta demostrar una mera sumisión a la autoridad de un oficial de orden público, *Schneckloth v. Bustamante,* 412 US 218 (1973). En el análisis de la totalidad de las circunstancias es necesario hacer un balance entre el interés que el Estado quiere proteger y el derecho del ciudadano a su seguridad personal libre de intromisiones irrazonables y arbitrarias del Estado. *Pueblo en interés del menor N.O.R.,* 136 D.P.R. 949, 966 (1994).

El Estado tiene un interés apremiante en mantener el orden y la seguridad en las instituciones penales. Es imperativo que el Estado tome medidas adecuadas para evitar el contrabando y que personas que visitan estas instituciones logren acceso e introduzcan sustancias controladas y armas a la comunidad penal. Por esta razón, se reduce el grado de expectativa a la intimidad y la protección misma, tanto de los confinados, como de personas civiles que desean entrar a visitar en instituciones penales, aunque en distintos grados. Vease, *Spear v. Sowders,* 71 F.3d 626, 629 (1995), citado con aprobación en *Pueblo v. Bonilla Bonilla, supra.* Atendiendo esta situación, el reconocido tratadista LaFave señala:

*"Security is the order of the day in prisons, jails and other detention facilities. The prisoners are subject to searches of their persons and quarters, and in addition it is often the practice to require visitors to the facility to submit to some form of search. Applying the Camara-Terry balancing approach to the later practice, it may be said that the need for security is sufficiently substantial as to justify as reasonable under the Fourth Amendment some type of screening process for visitors.*

*As one court has stated, a prison 'is a unique institution fraught with sensitive security hazards, not the least of these being smuggling of contraband such as drugs, money, knives, etc. The state has a high security interest in eliminating smuggling into and out of penitentiaries'. Indeed it may be said that it is vital that contraband articles be kept out of prison. This is necessary for the protection of inmates, employees of the institution and law enforcement officials assigned to that institution."* LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* 3d ed., Minnesota, Ed West Publishing Co., Vol 4 Sec. 10.7(b), pág. 657. (Citas omitidas)

Respondiendo a la necesidad de cumplir con la obligación gubernamental de proveer seguridad en las cárceles, es razonable someter a quien visita una institución carcelaria a algún tipo de **registro superficial para el cual no hace falta orden judicial ni tener motivos fundados**. Según el Artículo XVII, Sección 1 del Reglamento de Normas y Procedimientos para Regular las Visitas a los Miembros de la Población Correccional en las Instituciones Correccionales de Puerto Rico; éste establece que *"Todo visitante, sin excepción, estará sujeto al registro de su persona y pertenencias (bulto, cartera, maletines, entre otros) mediante cacheo, registro manual o por detección electrónica, antes de entrar al área que va a visitar. La Sección 4 del mismo reglamento establece que está prohibida la entrada de explosivos y drogas a la institución y establece que se podrá inspeccionar por mecanismos electrónicos o por medios caninos para detectar la presencia de explosivos y sustancias controladas. Los registros mencionados se consideran registros administrativos por su naturaleza superficial y rutinaria.*

*Los registros rutinarios sin orden judicial que han sido validados por tribunales federales "están todos predicados en un interés apremiante de proteger la salud y/o la seguridad pública". El elemento común en esos casos es que lo que se persigue es la "prevención de un daño irreparable e inminente que puede ocurrir como consecuencia directa y prácticamente inmediata de la conducta ilícita que se pretende detener. Esta*

282

*proximidad tanto en **tiempo** como en **cadena de causalidad**, es un factor fundamental de las excepciones que, por la protección de la salud y seguridad pública, se han hecho al requisito de orden judicial"*. Pueblo v. Cedeño Laclaustra, **2002 J.T.S. 117**, 157 D.P.R. ___.

En el caso ante nuestra consideración, el Tribunal emitió la resolución recurrida ordenando la supresión de la evidencia porque entendió que la droga incautada fue obtenida como fruto de un registro que fue nulo *ab initio*. Su decisión descansó en que se violó el Reglamento de Visitas, Artículo XVIII sobre registros al desnudo y bajo el fundamento de la norma esbozada en *Pueblo v. Bonilla Bonilla, supra.*

Este Tribunal no comparte este criterio, ya que el caso ante nuestra consideración es distinguible.

En *Pueblo v. Bonilla Bonilla, supra*, el tribunal estableció la norma que rige la admisión de evidencia incautada obtenida luego de requerírsele un registro al desnudo, esto al amparo de la protección constitucional contra registros y allanamientos irrazonables.

Sin embargo, los hechos del presente caso demuestran que la acusada entregó la evidencia voluntariamente y libre de coacción física o mental. Básicamente ocurre una de las excepciones bajo las cuales es legal proceder con un registro sin orden judicial. Nótese que en el momento en que la recurrida entregó la evidencia a solicitud de la agente Torres hubo una renuncia a su expectativa legítima a la intimidad en un ambiente libre de coacción física y sicológica. No puede perderse de vista que la recurrida estaba en carácter de visitante en un lugar donde la expectativa de intimidad está disminuida. El Estado tiene interés de proveer seguridad en las cárceles de evitar el contrabando tanto de armas y drogas. Debido a esto, los visitantes están alertados mediante rótulos que deben estar preparados para ser registrados físicamente así como sus paquetes. Los visitantes de la cárcel saben que estarán sometidos a diferentes mecanismos de seguridad.

Estamos de acuerdo en que el registro al desnudo se llevó a cabo sin cumplir estrictamente con el procedimiento establecido en el reglamento de visitas de registros al desnudo en una institución carcelaria. Sin embargo, la evidencia incautada no se obtuvo como resultado de dicho registro. Este no afectó en manera alguna a la acusada y, por ende, la evidencia incautada no es fruto de un registro ilegal.

### III

Por los fundamentos antes expresados, se expide el auto y se revoca la resolución recurrida.

Notifíquese por teléfono, facsímil y por la vía ordinaria a las partes.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General