*491 Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
Para confirmar el dictamen del Tribunal de Apelaciones, la decisión que hoy emite el Tribunal apela a un principio fundamental de nuestro sistema constitucional: el derecho a la intimidad, del cual proviene la garantía contra registros y allanamientos irrazonables. Es a partir de esta protección, que nuestro sistema brinda a los ciudadanos frente al ejercicio arbitrario del poder investigativo del Estado, que la mayoría desautoriza el que, en ausencia de una or-den judicial previa o de motivos fundados, un vigilante del Departamento de Recursos Naturales y Ambientales (DRNA) penetre en una finca privada para asegurar que la actividad de cacería deportiva allí practicada cumpla con los requisitos impuestos por ley. Por el contrario, entiendo que la naturaleza de esta actividad y las circunstancias en que necesariamente se lleva a cabo, unida a su cualidad de ser altamente regulada, impiden considerar la actuación administrativa aquí impugnada como arbitraria e inconstitucional.
I
En cumplimiento con las directrices de sus supervisores de patrullar e inspeccionar las actividades de cacería durante la temporada de caza de palomas, los vigilantes Luis Vargas y Erick Valentín se encontraban patrullando en el Sector Rayo Plata del barrio Encarnación del municipio de Lajas, un área donde se permite la caza deportiva, cuando escucharon varios disparos que provenían de la propiedad privada del Sr. Raynier Ramírez. Para llegar a dicha propiedad y cerciorarse del cumplimiento de los reglamentos que regulan la cacería, los vigilantes atravesaron la finca vecina con la autorización de su dueño, el señor Fabre. El *492 señor Fabre les indicó que él había construido la verja que separaba su finca de la del vecino, por lo cual se haría responsable de los daños, y cortó los alambres de la verja para dar acceso a los vigilantes a la finca del señor Ramírez, lugar donde continuaban las detonaciones.
Guiados por los disparos, los vigilantes siguieron un antiguo camino dentro de la finca del señor Ramírez hasta que encontraron dos vehículos estacionados. Continuaron la búsqueda y, a unos cincuenta pies, encontraron a una persona con una escopeta en la mano, mirando al cielo. En el suelo había maíz entero regado y, amarradas a un árbol por una cuerda de cuero, colgaban unas tórtolas. Continuando el camino, encontraron al recurrido, Sr. William Blassini Cabassa, con quien regresaron al campamento para revisar los documentos pertinentes. Luego, los vigilantes le expidieron tres multas administrativas al recurrido por cazar doce tórtolas en exceso del máximo de quince permitido, cazar en un área cebada y prestar su escopeta a una persona sin licencia de cazador.
Ante la agencia, los recurridos adujeron que los miembros del Cuerpo de Vigilantes llevaron a cabo un registro ilegal sin una orden judicial previa, por lo que la prueba en la que se sustentaban las multas era inadmisible. El DRNA no acogió este planteamiento y resolvió lo contrario, fundamentándose en las facultades del Cuerpo de Vigilantes para llevar a cabo registros sin una orden, a la luz de los propósitos de la Nueva Ley de Vida Silvestre de Puerto Rico.(1) El Tribunal de Apelaciones resolvió que no se probó ninguna de las excepciones de la Sección 6.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), 3 L.P.R.A. see. 2191, que validan las inspecciones administrativas sin una orden judicial previa. En particular, el foro apelativo concluyó que la cacería deportiva no es una actividad estrechamente re *493 guiada por el Estado y que, en todo caso, dicha excepción está limitada a las actividades comerciales. Por estos fundamentos, revocó la determinación del DRNA.
Ante esa determinación, el DRNA nos plantea la necesidad imperiosa de que los miembros del Cuerpo de Vigilantes puedan llevar a cabo los registros administrativos para hacer valer la ley y las disposiciones del reglamento sobre la cacería. Sin embargo, este Tribunal rechaza el argumento válido del DRNA de que la cacería es una actividad altamente regulada, por lo cual le aplica la excepción del “negocio estrechamente reglamentado”, excepción elaborada en Pueblo v. Ferreira Morales, 147 D.P.R. 238 (1998).
II
La Carta de Derechos de nuestra Constitución recoge los varios preceptos que componen nuestro concepto del derecho a la intimidad, en particular, las disposiciones sobre la inviolabilidad de la dignidad del ser humano, la protección contra los ataques abusivos a la honra, a la reputación y a la vida privada o familiar, y sobre la protección contra registros, incautaciones y allanamientos irrazonables. Art. II, Secs. 1, 8 y 10, Const. E.L.A., L.P.R.A., Tomo 1. Por tratarse de preceptos fundamentales, hemos resuelto que los registros administrativos o reglamentarios no están exentos de la norma general de que todo registro se presume irrazonable si no media una or-den judicial previa. No obstante, el requisito de causa probable para expedir una orden de registro o allanamiento es menos estricto en el ámbito administrativo que el que he-mos desarrollado para el ámbito penal. Véase E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984). Véanse, además: See v. City of Seattle, 387 U.S. 541 (1967); Camara v. Municipal Court, 387 U.S. 523 (1967).
La delegación del poder de investigación a las agencias administrativas es imprescindible para que esos organismos puedan ejecutar o poner en práctica sus funciones y *494 hacer efectiva la encomienda de fiscalización que se les confiere a través de las leyes que administran. En este sentido, hemos señalado que para efectuar un registro o allanamiento, la agencia debe obtener una orden judicial previa, “a menos que se consienta al registro, directa o indirectamente, o circunstancias de emergencia requieran lo contrario y el peso de los intereses en conflicto exija una solución distinta”. E.L.A. v. Coca Cola Bott. Co., supra, pág. 208.(2) Esto cobra mayor fuerza si reconocemos que “[l]os procesos administrativos son demasiado variados y complejos para encajarlos en un número reducido de moldes”. íd., pág. 214.
Según la LPAU, una agencia está facultada para llevar a cabo registros e inspecciones razonables, afines con el propósito de la licencia concedida, mientras actúe dentro del marco de sus funciones delegadas. A estos efectos, los registros sin una orden judicial previa se entenderán razonables y válidos en tres circunstancias: (a) en casos de urgencias o cuando se vean afectadas la seguridad o la salud pública, (b) cuando se lleven a cabo al amparo de las facul *495 tades de licénciamiento, concesión de franquicias, permisos u otras similares y (c) en casos en que la información requerida puede obtenerse a simple vista o en lugares públicos por mera observación. Sec. 6.1 de la LPAU, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, supra.
De lo anterior se pueden colegir dos excepciones a la regla general que están íntimamente relacionadas. En primer lugar, al solicitar un permiso o una licencia para participar de una actividad particular, cuyo ejercicio se entienda como un privilegio y no un derecho, puede entenderse consentido el registro con fines administrativos. En esas circunstancias, se exime a la agencia de tener que procurar una orden judicial previa para fiscalizar el uso debido de tal concesión. Pueblo v. Ferreira Morales, supra, pág. 255. Consecuentemente, con relación a las actividades cuyo ejercicio está sujeto a una reglamentación extensa y detallada, hemos dicho que las órdenes previas son innecesarias. Id., págs. 254-255. También he-mos resuelto, al igual que el Tribunal Supremo federal, que cuando se trata de actividades o de negocios estrechamente regulados, la expectativa de intimidad queda particularmente atenuada. Véanse: Pueblo v. Ferreira Morales, supra; New York v. Burger, 482 U.S. 691 (1987); Donovan v. Dewey, 452 U.S. 594 (1981).(3)
El Tribunal Supremo de Estados Unidos también ha reconocido la validez de aquellos registros sin una orden previa que suijan en el contexto de un esquema regulador y en presencia de circunstancias apremiantes o necesidades especiales del Estado, que se quebrantarían si se requiriera *496 cumplir con el requisito de causa probable. La excepción denominada “special needs doctrine” aplica cuando obtener una orden judicial previa sería impracticable. Véase Griffin v. Wisconsin, 483 U.S. 868, 873 (1987), donde el Tribunal Supremo federal reiteró que los registros administrativos sin una orden, que se efectúan de cierta actividad o industria al amparo de un esquema altamente regulador de una actividad o industria, son válidos si cumplen con los estándares de razonabilidad y siguiendo la pauta de Camara v. Municipal Court, supra, de New York v. Burger, supra, y de Donovan v. Dewey, supra. En Griffin v. Wisconsin, supra, se citan con aprobación las expresiones concurrentes del Juez Blackmun en New Jersey v. T.L.O., 469 U.S. 325, 351 (1985): "... we have permitted exceptions when ‘special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable’.” Griffin v. Wisconsin, supra, pág. 873. Luego, en Skinner v. Railway Labor Executives’ Assn., 489 U.S. 602 (1989), el Tribunal Supremo federal, citando Griffin, se reafirmó en la aplicación de esta doctrina cuando el requerir una orden judicial previa atentaría contra las necesidades especiales del estado.(4)
A modo persuasivo, nos parecen acertadas las decisiones de los Tribunales Supremos de los estados de Montana y Minnesota, que reconocen las necesidades especiales del Estado para fiscalizar e implantar su política pública sobre la caza y pesca deportivas. En State v. Boyer, 42 P.3d 771 (2002), el Tribunal Supremo de dicho estado, reconociendo *497 la naturaleza altamente regulada de la pesca, resolvió que la pesca recreativa es un privilegio que otorga el estado y no un derecho, y razonó que quien practique tal deporte consiente a ciertas intromisiones del estado. El Tribunal concluyó lo siguiente:
In complying with the well established license requirements, anglers acknowledge the prospect of at least some governmental intrusion into their activities. In engaging in this highly regulated activity, an angler must assume the burdens of the sport as well as its benefits. Thus, no objectively reasonable expectation of privacy exists when a wildlife enforcement officer checks for hunting and fishing licenses in open season near game habitat, inquires about game taken, and requests to inspect game in the field. In this capacity, game wardens are acting not only as law enforcement officers, but as public trustees protecting and conserving Montana’s wildlife and habitat for all of its citizens. íd., pág. 776.
Por otra parte, el Tribunal Supremo de Minnesota concluyó que en dicho estado existe un esquema de regulaciones dirigido a proteger la población de peces y, por consiguiente, la práctica del deporte de la pesca recreativa. Por ello, al igual el Tribunal Supremo de Montana, razonó que las personas que solicitan una licencia para practicar este deporte —el cual es un privilegio y no un derecho— aceptan las condiciones que el estado les impone y autorizan ciertas intromisiones. Con referencias a State v. Boyer, supra, el Tribunal atendió la naturaleza de la pesca recreativa y el hecho de que la inspección ocurrió durante la temporada de caza y en las cercanías del hábitat, para concluir que la intervención del estado fue razonable y la intromisión fue mínima. State v. Colosimo, 669 N.W.2d 1, 4-6 (Minn. 2003).
Nos hemos referido, como lo hace la opinión mayoritaria, a nuestra Constitución para matizar el alcance de la prohibición contra los registros y allanamientos irrazonables. Hay otra disposición constitucional que también estamos obligados a considerar en el contexto de este caso, esta es, la Sección 19 del Artículo VI, supra, que es *498 tablece la política pública constitucional de conservación de nuestros recursos naturales para el beneficio del pueblo.
Es importante señalar que, al igual que Puerto Rico, los estados de Minnesota y Montana anuncian en su Constitución una política pública de conservación de sus recursos naturales. El estado de Montana recoge en su Constitución la política pública del estado de conservar y mejorar un ambiente limpio y saludable para las presentes y futuras generaciones. Art. IX, Sec. 1(1) de la Constitución de Montana, Mont. Const. Art. IX, Sec. 1(1). Según esta encomienda constitucional, el Tribunal Supremo de dicho estado reconoció en State v. Boyer, supra, la facultad delegada a los agentes del departamento de protección ambiental para proteger estos intereses y el propósito del esquema regulador que se impone sobre la práctica de la pesca recreativa. Por su parte, cuando el Tribunal Supremo de Minnesota atendió el caso State v. Colosimo, supra, el estado había enmendado recientemente su Constitución para reflejar la importancia de la cacería y de la pesca recreativa en su herencia cultural y, de esta manera, elevar a rango constitucional el deber de regular el uso de los recursos naturales. Art. XII, Sec. 12 de la Constitución de Minnesota; Minn. Const. Art. XII, Sec. 12.
De esta forma, los más altos foros de estos estados, que han reconocido la validez de las intervenciones sin una or-den previa para asegurar los recursos naturales con miras a preservar la práctica de la pesca o de la caza recreativa, concluyen que en el contexto de las circunstancias particulares en que se dan estas actividades, el requisito de motivos fundados o de obtener una orden judicial previa truncaría la facultad del estado para hacer cumplir las normas que regulan detalladamente tales actividades. Véanse: State v. Boyer, supra, pág. 776; State v. Colosimo, supra, pág. 7. Otros estados han llegado a la misma conclusión. Por ejemplo, en State v. Halverson, 277 N.W.2d 723, 724-725 (S.D. 1979), el Tribunal Supremo de ese estado resolvió como sigue: “Since it is a privilege to hunt wild game, a hunter tacitly consents to the inspection of any game ani *499 mal in his possession when he makes an application for and receives a hunting license.” También, People v. Layton, 552 N.E.2d 1280, 1287 (Ill. App. 1990): “In this State [Illinois], hunting is highly regulated, arguably more so than driving. Hunting is a privilege, not a right, to which licensing requirements apply. Because of the nature of hunting, we conclude that licensing (or hunting without a license) may be deemed consent to some intrusions.” Véase, además, Drane v. State, 493 So.2d 294, 297 (Miss. 1986).
En Pueblo v. Ferreira Morales, supra, resolvimos que cuando el interés gubernamental reglamentado es significativo o cuando existen circunstancias apremiantes, se presumen constitucionalmente razonables los registros administrativos sin una orden previa o sin motivos fundados para asegurar el cumplimiento efectivo del esquema regulador, si éste cumple ciertas condiciones. Id., pág. 250 esc. 3. Las condiciones que debe cumplir el esquema regulador son las siguientes: debe estar fundamentado en un interés estatal sustancial, promover el interés del Estado y constituir un sustituto constitucional adecuado a la orden judicial, en cuanto a certeza y regularidad de la intervención. Id., pág. 256. Finalmente, expresamos lo siguiente:
De ordinario, una industria o actividad comercial es objeto de particular atención por el aparato estatal cuando la actividad realizada incide de manera significativa sobre la seguridad o salud pública. Éstas son áreas sobre las cuales el Estado posee un legítimo interés ....
Es preciso examinar la naturaleza de la industria en cuestión para determinar si su operación incide sobre la seguridad y salud públicas. Así, sin pretender ser exhaustivos, resulta adecuado considerar si el estatuto establece un esquema detallado para la concesión de licencias de ser éstas requeridas, si la operación de la actividad está sujeta al cumplimiento de estrictas medidas seguridad y operación, y si la violación de las disposiciones estatutarias acarrea sanciones civiles y penales entre otros aspectos. ... Ninguno de estos factores es determinante y su examen debe realizarse integralmente para hacer un adecuado balance entre los intereses públicos y privados. Pueblo v. Ferreira Morales, supra, págs. 254-257.
*500 No hay duda de la alta jerarquía —incluso de índole constitucional— que tiene la política pública sobre la protección y conservación de nuestros recursos naturales y de que se trata de un interés legítimo y apremiante del Estado. Tampoco hay duda de que la cacería deportiva, que requiere el uso de armas de fuego o municiones de perdigón, es una actividad que incide sobre la seguridad pública.
Además, la cacería es una actividad estrechamente regulada y las leyes y los reglamentos aplicables a la cacería y a la protección de los recursos naturales construyen un esquema detallado de licencias y permisos en protección de ambos intereses. De ahí que, en el ejercicio de la facultad del Cuerpo de Vigilantes de asegurar el cumplimiento de las leyes y de los reglamentos aplicables a la cacería, al amparo de la concesión de las licencias requeridas para dicha actividad, están presentes los presupuestos enunciados en Pueblo v. Ferreira Morales, supra. Estos confieren validez a la intervención de los vigilantes, en circunstancias razonables, sin una orden judicial previa o motivos fundados. Examinemos algunas de estas disposiciones.
I-H HH H-1
Conforme a la declaración de política pública sobre la protección del hábitat natural y de la vida silvestre, la Nueva Ley de Vida Silvestre de Puerto Rico prohíbe la caza o colección de especies de vida silvestre en ausencia de un permiso emitido por el Secretario del DRNA. Ley Núm. 241 de 15 de agosto de 1999 (12 L.P.R.A. sees. 107a y 107c). Respecto a la reglamentación de la caza deportiva, la designación de hábitats y la adquisición de terrenos para reservas, la ley crea una Junta Asesora para aconsejar al Secretario del DRNA. 12 L.P.R.A. sec. 107b.
Esta ley define la caza deportiva como una “[a]ctividad recreativa autorizada por el Secretario [del DRNA] en la cual el participante, llamado cazador deportivo, utiliza un arma para hacer presa un animal de caza durante las tem *501 poradas establecidas por el Secretario”. 12 L.P.R.A. see. 107(d). Dicha actividad se distingue de la caza no deportiva, la cual es una “[a]ctividad de caza para fines científicos, educativos, control de poblaciones o cualquiera otra actividad de caza no deportiva autorizada por el Secretario mediante permiso”. 12 L.P.R.A. sec. 107(e).
La operación de las actividades de cacería, incluso el establecimiento de cotos de caza y los procedimientos relacionados con el registro, la portación y el uso de armas de caza, están sujetas a estrictas medidas de seguridad cuyo incumplimiento podría conllevar la revocación de los permisos y licencias otorgadas.(5) Véanse: Art. 22 de la Nueva Ley de Vida Silvestre de Puerto Rico, 12 L.P.R.A. sec. 107t; *502 Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico, Reglamento Núm. 6765 de 11 de febrero de 2004 (Reglamento Núm. 6765), Art. 3.09, pág. 40.
Entre los propósitos del reglamento está “[Reglamentar con mayor rigor el otorgamiento de licencias de caza, la inscripción de armas de caza y la revocación y suspensión de las mismas por infracciones expuestas en la ley y en este reglamento”. Reglamento Núm. 6765, Art. 1.03(C), pág. 6. Las licencias de caza y otros permisos afines están condicionados a múltiples requisitos, así como el uso, el almacenamiento, la transportación, la portación y el tipo de armas permitidos para la cacería. Véase Reglamento Núm. 6765, Arts. 3 y 4, págs. 29-44.
En el reglamento se detallan los días en que se permitirá la caza de los distintos tipos de animales durante su temporada de caza y la cantidad máxima autorizada. El Artículo 5.01 hace referencia al apéndice, en el cual se precisan los animales que se pueden cazar deportivamente y aclara que, “aparte de los animales de caza aquí mencionados, se prohíbe cazar cualquier otro animal a menos que medie una autorización expedida por el Secretario”.(6) *503 También se regulan los lugares para practicar esta actividad y se prohíbe la caza deportiva en los bosques estatales, en otras áreas relacionadas con los cuerpos de agua declarados como refugios de vida silvestre, las poblaciones, las residencias, los caminos públicos, las reservas naturales donde la caza es incompatible con la conservación, así como en las áreas cebadas. Reglamento Núm. 6765, Arts. 5.08 y 5.10, págs. 48 y 53. La caza se permite sólo en los lugares no prohibidos, es decir, en fincas privadas con el consentimiento del dueño y en cotos de caza. Todo lo concerniente al establecimiento y la otorgación permisos para operar cotos de caza se reglamenta en el Artículo 6. Véase Reglamento Núm. 6765, págs. 54-59.
Además del tiempo y del lugar en los que se permite la práctica de esta actividad, el Reglamento Núm. 6765 establece una serie de restricciones especiales y muy específicas que atienden la forma y manera de cazar animales. Entre otras cosas, se prohíbe cazar animales con la ayuda de cebo y no se permite prestar las armas de caza a quien no sea un cazador autorizado. Art. 19(d) de la Nueva Ley de Vida Silvestre de Puerto Rico, supra, 12 L.P.R.A. sec. 107q(d); Reglamento Núm. 6765, Art. 5.09(A)(7) y (H).(7)
Para hacer valer la política pública de protección del *504 hábitat natural y de la vida silvestre, y salvaguardar los intereses gubernamentales de seguridad pública, la Nueva Ley de Vida Silvestre de Puerto Rico obliga a todo cazador debidamente autorizado a portar los permisos o las licencias en todo momento en que se transporten las armas de caza o se practique la caza, y permitir su inspección de ser requerido por otro cazador, por un funcionario del orden público o por un funcionario del DRNA debidamente identificado. 12 L.P.R.A. sec. 107q(b). Además, el cazador *505 deberá “[s]uministrar la información requerida por el Departamento con el propósito de monitorear las actividades de caza deportiva”. 12 L.P.R.A. sec. 107q(h). A tono con la ley, el inciso (I) del Artículo 5.09 del Reglamento Núm. 6765 dispone los límites de este registro administrativo:
Todo cazador deportivo brindará información sobre la cantidad de animales que cazó, lugares que visitó, fechas de la captura o caza y cualquier otra información que se le requiera con propósitos de monitoreo sobre la cosecha de animales en Puerto Rico. Además, están obligados a presentar su licencia a los empleados del Departamento o funcionarios y agentes del orden público, durante el desempeño de las funciones de éstos en el campo. De igual manera tendrán que mostrar la inscripción del arma y su arma de manera que pueda ser corroborado su número de serie. (Énfasis nuestro.) Reglamento Núm. 6765, supra, pág. 52.
Además, dicho reglamento claramente dispone lo siguiente:
Todo cazador permitirá la inspección del producto diario de su caza y su licencia de caza deportiva a funcionarios (empleados) del Departamento debidamente autorizados e identificados, funcionarios del orden público o un cazador autorizado. Cualquier especie de fauna silvestre cazada en violación a este Reglamento, así como las armas, balas, cartuchos, municiones, arcos, flechas, cualquier embarcación, vehículo o cualquier aparato que haya sido utilizado en violación a este Reglamento podrán ser retenidas e incautadas por miembros del Departamento debidamente autorizados, miembros del Cuerpo de Vigilantes y/o de la Policía de Puerto Rico. (Énfasis nuestro.) Art. 5.06B del Reglamento Núm. 6765, supra, pág. 47.
En otras ocasiones, el reglamento anuncia el interés apremiante de hacer valer las disposiciones de la Nueva Ley de Vida Silvestre de Puerto Rico y avisa lo siguiente:
Las actividades comerciales relacionadas con la posesión, reproducción, compra, venta, importación y exportación de vida silvestre reguladas por este reglamento están revestidas de un interés gubernamental sustancial por lo que el Departamento podrá, al amparo de sus facultades de licénciamiento y permisos, realizar inspecciones administrativas de sorpresa sin or- *506 den previa. Art. 7.06B del Reglamento Núm. 6765, supra, pág. 65.
El reglamento también avisa que el DRNA podrá realizar inspecciones rutinarias para asegurar el cumplimiento de las leyes, los reglamentos y las condiciones del permiso o de la licencia de las facilidades donde se mantengan las especies que haya autorizado poseer. Art. 8.08 del Reglamento Núm. 6765, pág. 80.(8)
La Ley Núm. 1 de 29 de junio de 1977 (12 L.RR.A. see. 1201 et seq.), que crea el Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales (Cuerpo de Vigilantes), dispone que los miembros de este Cuerpo deberán velar por el cumplimiento de todas las leyes y los reglamentos relacionados con la conservación, la protección y el desarrollo de los recursos naturales de Puerto Rico. 12 L.P.R.A. sec. 1205(a)(8). Como parte de dicho deber, los miembros del Cuerpo de Vigilantes tienen la facultad, bajo la dirección del Secretario de DRNA, de inspeccionar y requerir la presentación de cualquier licencia o permiso expedido por el DRNA para realizar cualquier actividad bajo la jurisdicción de esa agencia “en terrenos públicos o privados”. 12 L.P.R.A. sec. 1205(b)(2)(A). Para poner en vigor los preceptos legales bajo su encomienda, el reglamento del Cuerpo de Vigilantes, además, faculta a sus miembros a penetrar a las propiedades privadas con el permiso del dueño, excepto cuando estén persiguiendo a una persona por haber violado las leyes que administra el DRNA, las cuales tienen el deber de proteger.(9)
*507 > I—I
Resulta evidente que la cacería, a pesar de definirse como una actividad recreativa, está extensamente regulada por las leyes y los reglamentos aquí descritos, por lo que, según mi criterio, le aplica la excepción de actividad altamente regulada que elaboramos en Pueblo v. Ferreira Morales, supra. Además, el esquema regulador sirve a dos intereses gubernamentales de gran envergadura, a saber, la protección de los recursos naturales y la seguridad pública, y advierte a los que participan de esta actividad que estarán sujetos a fiscalización. Si dicho registro se lleva a cabo para fiscalizar el ejercicio de la actividad reglamentada y se mantiene la intervención dentro de los límites autorizados que le brindan certeza y regularidad al registro, éste será un registro válido y razonable.
Los miembros del Cuerpo de Vigilantes, aunque son agentes de orden público, ocupan un espacio especial en el ordenamiento. Sus funciones y, por ende, sus intervenciones con la ciudadanía no sólo se manifiestan en protección de los recursos naturales y de la vida silvestre, sino también para la seguridad de las poblaciones y de los mismos practicantes de la cacería. Por otro lado, el Estado tiene necesidades especiales al implantar su política pública sobre la cacería deportiva. Primeramente, la práctica de este deporte se permite en pocos lugares públicos. Esto significa que para fiscalizar el cumplimiento, los vigilantes necesitan poder entrar a fincas privadas y a cotos de caza. No hay forma de asegurarse de que un individuo está autorizado a cazar, que está cazando en un lugar autorizado y que se ha limitado a la cantidad de animales permitidos si está practicando la cacería dentro de una finca privada. Requerir una orden judicial en estas circunstancias sería *508 muy oneroso y, prácticamente, convertiría el ejercicio de fiscalización en una facultad en papel, pero inexistente o inútil en la práctica. Por otro lado, el requisito de motivos fundados es igualmente elusivo. La cacería no es ilegal per se. Un vigilante puede escuchar disparos, pero ¿de qué manera podría deducir los motivos fundados para creer que se están incumpliendo las leyes y normas de la cacería?
En su informe, el oficial examinador del DRNA manifestó lo impracticable que sería requerir una orden judicial previa, y similarmente los motivos fundados, para inspeccionar y fiscalizar las actividades de cacería. Concluyó que
... sólo basta imaginar lo que tendrían que hacer los Vigilantes antes de cada intervención por cada finca que fueran a intervenir durante cada día de trabajo: estarían obligados a localizar el dueño de cada finca donde se esté cazando para solicitarle su permiso para entrar; si el dueño no otorga el permiso o si no puede ser localizado, entonces deberán acudir a un tribunal para obtener una orden judicial de registro; luego deberán regresar a la finca donde es posible que ya no esté el cazador o los cazadores que pretendían intervenir. No hay duda que la teoría del recurrente es incompatible con el interés del Estado y el esquema regulador de la caza ya discutidos.(10)
Es mi criterio que la naturaleza de esta intromisión pesa menos cuando se mide contra la necesidad del Estado de regular esta actividad y la inmediatez con la cual se debe actuar, para cumplir con las facultades de fiscalización delegadas a la agencia, en circunstancias donde no es factible obtener una orden judicial previa ni exigir los motivos fundados. Por estas razones, disiento.

 Luego de examinar la evidencia admitida, el Departamento de Recursos Naturales y Ambientales (DRNA) confirmó la validez de dos de los tres boletos expedidos. Por no haber suficiente prueba de que la escopeta fuera utilizada por una persona que no portaba licencia, ordenó la cancelación de la multa.

 Antes de que resolviéramos E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984), el Tribunal Supremo de Estados Unidos había resuelto See v. City of Seattle, 387 U.S. 541 (1967), y Camara v. Municipal Court, 387 U.S. 523 (1967), en los cuales requirió una orden previa para llevar a cabo un registro o inspección administrativa. Ambos casos reconocen la importancia de las inspecciones administrativas para hacer valer las normas de salud y sanidad y la diferencia de finalidades de los registros administrativos y los registros penales. Se reconoció que los estándares de causa probable en el ámbito penal son distintos en el ámbito administrativo, y se satisfacen si se cumplen los requisitos legislativos y administrativos. Véase D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Colombia, Ed. Forum, 2001, pág. 228. El caso Camara v. Municipal Court, supra, trataba de un registro administrativo realizado a unas viviendas, al amparo del poder del estado de velar por el cumplimiento con los límites máximos de ocupación. El Tribunal Supremo federal resolvió que para examinar la validez de un registro administrativo sin una orden judicial previa se debe considerar si el registro sin la orden judicial es necesario para la protección de un interés público significativo, que la intrusión sea mínima, que la finalidad del registro no sea descubrir la ocurrencia de un delito y que, el requerir una orden de registro, contrarrestaría y haría impráctica la protección del interés público que se persigue. Finalmente, resolvió que los hechos del caso no mostraban una urgencia particular que justificara el no requerir una orden judicial previa para inspeccionar el hogar. En See v. City of Seattle, supra, el Tribunal Supremo federal dejó la puerta abierta para resolver si, al amparo de la facultad de licénciamiento, sp requeriría igualmente una orden previa para efectuar un registro administrativo. Id.

 Al estar sujeto al criterio de razonabilidad, hemos sostenido la validez de otros registros efectuados sin una orden judicial o sin motivos fundados cuando éstos resultan razonables, en el balance de los intereses del Estado y el derecho a la intimidad de las personas. Véanse: Pueblo v. Yip Berríos, 142 D.P.R. 386 (1997); Pueblo v. Falú Martínez, 116 D.P.R. 828 (1986). Igualmente, y en sentido similar, hemos reconocido que la expectativa de intimidad es menor cuando el Estado tiene un interés imperativo o ante circunstancias apremiantes que justifican prescindir del requisito de la orden judicial previa, como sucede con respecto a los registros incidentales al arresto, los registros para preservar evidencia y los registros tipo inventario. Véanse: Pueblo v. Dolce, 105 D.P.R. 422 (1976); Pueblo v. González Rivera, 100 D.P.R. 651 (1972); Pueblo v. Rodríguez Rodríguez, 128 D.P.R. 438 (1991).

 Siguiendo el razonamiento de Griffin v. Wisconsin, 483 U.S. 868, 873 (1987), en Palmieri v. Lynch, 392 F.3d 73 (2do Cir. 2004), el Segundo Circuito rechazó los argumentos del demandante sobre violaciones a la protección constitucional federal contra registros irrazonables y de sus derechos propietarios bajo una reclamación estatal de trespass. El tribunal encontró que la intromisión fue de minimis y reconoció la validez de un registro sin una orden realizada por una agencia de gobierno de protección ambiental de acuerdo con los factores siguientes: (1) la naturaleza del reclamo de intimidad; (2) la naturaleza de la intromisión, y (3) la naturaleza de los intereses y la necesidad del Estado. Similarmente, hay jurisprudencia del estado de Illinois que, utilizando un análisis de “special needs”, resuelve que la cacería es una industria estrechamente regulada. Véase People v. Layton, 552 N.E.2d 1280, 1287 (Ill. App. 1990).

 La Nueva Ley de Vida Silvestre de Puerto Rico enumera decenas de actos ilegales punibles relacionados con la caza, importación, exportación, posesión ilegal de especies, portación o transportación de armas de manera prohibida y modificación del hábitat natural. Específicamente, la ley detalla y penaliza los actos siguientes:
“(a) Cazar deportivamente en Puerto Rico sin la correspondiente licencia de caza deportiva y sin el sello oficial de la temporada, cuando aplique.
“(b) Cazar deportivamente cualquier especie de vida silvestre que no ha sido designada por el reglamento como animal de caza.
“(£) Cazar deportivamente las especies de fauna silvestre designadas por el Secretario como animales de caza fuera de las temporadas de caza establecidas. No será considerada ilegal, sin embargo, la caza de especies de vida silvestre para fines científicos y control de animales o educacionales por personas debidamente autorizadas para ello por el Secretario.
“(g) Cazar deportivamente en los Bosques Estatales; cazar en los terrenos de dominio público administrados por el Departamento excepto en reservas de vida silvestre y aquellas reservas naturales donde el Secretario determine que la caza es una actividad compatible. El Secretario establecerá mediante reglamento los criterios para determinar los usos compatibles en las reservas naturales.
“(h) Cazar deportivamente una cantidad de aves y animales en exceso a la máxima establecida por cada día de caza o en una etapa de vida o sexo distinto a aquéllos establecidos por el Secretario para cada ejemplar de ave o animales de caza.
“(i) Cazar o coleccionar cualquier especie de vida silvestre en un número mayor, en una etapa de vida o sexo distinto a aquéllos autorizados por el Secretario en los casos en que éste hubiere otorgado un permiso especial para cazar o coleccionar con fines científicos y control de animales.
“(j) Portar, transportar un arma, o cazar con un arma que no esté registrada, según se establece más adelante ....
“(k) Portar o transportar cualquier arma de casa deportiva fuera de las temporadas de caza ....
“(0 Portar o transportar cualquier arma de caza en los terrenos de dominio público en los que se haya prohibido la caza, a menos que medie un permiso escrito del Secretario.
“(ll) Establecer u operar cotos de caza sin obtener un permiso del Secretario.
*502 “(m) Cazar en los cotos de caza sin haber obtenido del Secretario la correspondiente licencia opermiso.
“(n) Cazar en los cotos de caza cualquiera de las especies de fauna silvestre que no haya sido designada por el Secretario como animales de caza mediante reglamento.
“(ñ) Cazar deportivamente, cualquier especie de fauna silvestre en cualquier camino público o a una distancia menor de cien metros de las poblaciones y de las viviendas, a menos que la vivienda pertenezca al cazador o a una persona que le haya autorizado a cazar en el perímetro de cien metros.
“(o) Cazar o coleccionar las especies vulnerables o en peligro de extinción ....
“(q) Cazar de cualquier forma que no sea la autorizada mediante reglamentación.
“(u) Poseer, transportar, coger, coleccionar o destruir los individuos, nidos, huevos o creas de las especies de vida silvestre sin la previa autorización del Secretario
“(v) Cazar con cualquier arma que no sea autorizada ... o mediante permiso otorgado por el Secretario o el utilizar municiones que están prohibidas por reglamento.” 12 L.P.R.A. sec. 107d.

 Se exceptúan los animales que el reglamento clasifica como “animales dañinos”. Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico, Reglamento Núm. 6765 de 11 de febrero de 2004 (Reglamento Núm. 6765), págs. 44-45.

 El Artículo 5.09, sobre las restricciones especiales, dispone lo siguiente:
“A. Ninguna persona podrá cazar deportivamente las especies permitidas por este reglamento de la siguiente forma y manera:
“1- Desde un escondite o “blind” instalado de manera permanente. El escondite tiene que ser movible y portátil y sólo podrá ser instalado en el periodo comprendido entre, dos horas antes del comienzo de la cacería hasta una hora luego de la puesta del sol de ese mismo día. El mismo no debe interrumpir el libre flujo de las personas, vehículos o botes en el lugar de caza.
“2- Con la ayuda y el uso de un automóvil u otro vehículo de motor o avión, a menos que el motor esté apagado y el movimiento progresivo haya cesado.
“3- Con la ayuda y el uso de un bote de motor o velero, a menos que el motor esté apagado o las velas estén recogidas y el movimiento progresivo de las embarcaciones haya cesado.
“4- Con el uso o ayuda de señuelos vivos, excepto aquellas personas a quien el Secretario le haya otorgado un permiso para la captura de exóticos o permiso especial para control de animales o investigación.
*504 “5- Con el uso de discos o grabaciones del llamado de las aves o sonidos de las mismas o el uso de amplificadores eléctricos imitando el llamado de éstas.
“6- Mediante el uso de un vehículo de motor, bote de motor o bote de vela para conducir, perseguir o acorralar las aves, con el propósito de ponerlas a tiro del cazador.
“7- Con la ayuda de cebo. El área se considera como que ha sido cebada, hasta 10 días después de haberse removido los alimentos.
“8- De cualquier otra forma que no sea la autorizada por reglamento.
“9- Sin el sello de caza correspondiente para la temporada.
“B. Ninguna persona debe poseer por día en el área de caza o cuando regrese del área a su automóvil, campamento de caza o se dirija a su residencia un número de aves, cabros y/o cerdos mayor a los establecidos mediante edicto por el Secretario.
“C. Ninguna persona podrá desplumar completamente un ave en el área de caza. Por lo menos, la cabeza y una de las alas, deben permanecer con todas sus plumas adheridas al ave, cuando sea transportada del área de caza a su residencia.
“D. Ninguna persona podrá exportar o transferir especies de aves cazadas en Puerto Rico a menos que el embarque esté marcado en su exterior con (1) el nombre y dirección de la persona que envía las aves, (2) el nombre de la persona a quien se les envían, y (3) el número de cada una de las especies en el embarque.
“E. Aquellas aves que sean heridas, deben ser sacrificadas de inmediato.
“F. Ninguna persona podrá entregar, poner o dejar las aves cazadas en un lugar o bajo la custodia de otra persona a menos que las aves estén marcadas con una tarjeta con la siguiente información:
“1- La firma y dirección del cazador.
“2- El total de aves por especie.
“3- La fecha en que las aves fueron cazadas.
“4- Se requerirán marcas si las aves son transportadas por otra persona que no fuere el cazador o si las aves han sido dejadas para ser desplumadas o almacenadas (incluyendo almacenamiento temporal), enviadas o llevadas a un taxidermista.
“G. Está prohibido la utilización de municiones de plomo para la caza de aves acuáticas. Durante la temporada de caza de aves acuáticas se utilizarán las municiones aprobadas por el Servicio Federal de Pesca y Vida Silvestre.
“EL Ningún cazador deportivo prestará sus armas de caza excepto cuando se trate de otro cazador deportivo con licencia activa, en cuyo caso éste deberá acompañarlo en todo momento en que porte o transporte dicha arma o practique la cacería. Cuando un cazador preste su arma a otro cazador autorizado debe darle, por el periodo mientras éste esté utilizando el arma, la inscripción de la misma, para que pueda demostrar que es un arma legalmente inscrita. Ambos cazadores deben mantener contacto visual o auditivo. ...’’Reglamento Núm. 6765, supra, págs. 49-52.

 Nos abstenemos de hacer referencia a la regulación de la cetrería para dilucidar la naturaleza de la reglamentación de la cacería, debido a que no hay hechos en controversia que nos obliguen a aplicar dicha normativa. No obstante, a modo de ejemplo, véase la Ley de Cetrería del Estado Libre Asociado de Puerto Rico, Ley Núm. 137 de 25 de julio de 2000 (12 L.P.R.A. see. 72 et seq.).

 Art. 5.2A del Reglamento del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, Reglamento Núm. 5855 de 11 de septiembre de 1998, págs. 14-15; Sec. 5.2(a) del Reglamento de Organización y Administración de los Recursos Humanos del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, Reglamento Núm. 7336 de 18 de abril de 2007, pág. 12. La ley, además, menciona específicamente a la Sección 6.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU) y de esta *507 manera recoge las excepciones al requisito de una orden previa para registros en propiedades privadas. 12 L.P.R.A. sec. 1205(b)(1). Asimismo, el reglamento del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales (Cuerpo de Vigilantes) reitera esta autoridad. Véase Art. 5.2D1 del Reglamento Núm. 5855, supra, pág. 16. Véase, además, Sec. 5.2(d)(1) del Reglamento Núm. 7336, supra, pág. 13.

 Apéndice, pág. 80.