El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
La Oficina del Procurador General, en representación del Departamento de Recursos Naturales y Ambientales de Puerto Rico (DRNA) (peticionaria), nos solicita que revo-quemos la sentencia emitida por el Tribunal de Apelacio-nes el 28 de febrero de 2011. Mediante el referido dictamen se revocaron las multas que vigilantes de esa agencia im-pusieron a los cazadores Alberto L. Acarón Montalvo y Carlos R. Wiscovitch (recurridos). Sostuvo el foro a quo que los vigilantes violaron la disposición constitucional que pro-híbe los registros y allanamientos irrazonables, y además, que no existía prueba en el expediente administrativo que sostuviera las faltas imputadas. Señala la peticionaria que era imperativo esgrimir como cuestión de umbral si los ca-zadores podían impugnar el allanamiento realizado. Exa-minado el recurso de autos, modificamos la sentencia del foro apelativo y, así modificada, confirmamos.
*569 I
El 16 de noviembre de 2009 miembros del Cuerpo de Vigilantes del DRNA accedieron a la finca Toro Farms, sita en el municipio de Cabo Rojo, debido a una alegada(1) lla-mada telefónica que realizó el Sr. Milton Toro —dueño de esa finca— para denunciar la presencia de cazadores no autorizados en esta. Una vez allí, los vigilantes inspeccio-naron las pertenencias de los recurridos y encontraron va-rias presas y armas de caza. En consecuencia, el vigilante Ricardo Rivera les expidió dos boletos de falta administra-tiva, imponiéndoles el pago de una multa de $500 por cazar en una finca privada sin permiso del dueño.
Inconformes con tal proceder, los cazadores presentaron ante el DRNA sendos recursos de revisión de boletos, y a su vez, solicitaron que se celebrara una vista adminis-trativa.(2) Impugnaron las multas impuestas y adujeron que poseían el aval del Sr. Milton Toro para cazar en la colindancia de Toro Farms. Sin embargo, a pesar de mani-festar lo anterior, como parte de sus defensas sostuvieron que cuando fueron intervenidos no estaban cazando en esa finca, sino en un terreno contiguo identificado como la Finca Ruiz. En ese contexto, alegaron que el allanamiento realizado por los vigilantes fue ilegal, ya que no contaban con la autorización del dueño de la finca Ruiz para irrum-pir en ese predio, razón por la cual entendían que debía descartarse toda evidencia producto de dicha intervención e invalidarse las multas emitidas.
Así las cosas, se celebró la vista administrativa en la cual únicamente se desfiló prueba testimonial: el vigilante Ricardo Rivera atestiguó por la agencia y los dos recurridos en su propia defensa. Conviene destacar que durante la *570 audiencia surgió una controversia en cuanto a la existencia de una querella que alegadamente había presentado el Sr. Milton Toro. No obstante, ninguna de las partes presentó a este último como su testigo.(3)
Luego de escuchar y aquilatar la prueba, la Oficial Exa-minadora emitió su informe y determinó, como cuestión de hecho, que el 15 de noviembre de 2009, el Sr. Milton Toro denunció al Centro de Mando del Cuerpo de Vigilantes que unas personas se encontraban cazando en su propiedad sin su autorización. Añadió que, en respuesta a esa querella, los vigilantes se personaron a la finca Toro Farms, donde encontraron a los recurridos cazando. Además, determinó como un hecho probado que cuando los vigilantes les cues-tionaron en cuanto a si poseían permiso del dueño para cazar allí, estos proveyeron la información de contacto del Sr. Milton Toro para que verificaran su anuencia. No obs-tante, ello no se pudo corroborar. Conforme a lo anterior, el DRNA resolvió acoger las determinaciones de hechos for-muladas por la Oficial Examinadora y sostuvo la validez de los boletos expedidos.(4)
En desacuerdo con la decisión, los recurridos acudieron al Tribunal de Apelaciones(5) y argumentaron que en el ex- *571 pediente no obró prueba que sostuviera el proceder administrativo. Así también, argüyeron que el DRNA ha-bía errado al basar su determinación en evidencia inadmi-sible por considerar que esta era fruto de un registro ilegal. En respuesta, el DRNA expuso que los cazadores no tenían legitimación para presentar esa defensa.
Atendido el recurso, el foro a quo acogió parte de los planteamientos de los recurridos y revocó la resolución de la agencia. El tribunal intermedio razonó que el expediente administrativo no contenía evidencia sustancial que fun-damentara la decisión del DRNA y añadió que el registro que se llevó a cabo fue ilegal puesto que no contó con una orden judicial al efecto ni se configuró ninguna de las ex-cepciones que permiten a las agencias administrativas rea-lizar un registro sin la venia judicial. En cuanto a la auto-rización basada en la querella, pronunció que el DRNA no logró demostrar la existencia de dicha querella. (6) Por lo tanto, resolvió que los vigilantes entraron a la finca Toro Farms sin el consentimiento de su dueño. Al ser así, con-cluyó que estos transgredieron los derechos constituciona- *572 les de los recurridos y, consecuentemente, invalidó los bo-letos emitidos.
No conteste con ese dictamen, comparece la peticionaria mediante el recurso de certiorari de epígrafe y señala:
Erró el Tribunal de Apelaciones al no considerar la controver-sia de umbral respecto a la ausencia de legitimación de los cazadores recurridos para impugnar la alegada entrada y re-gistro ilegal, previo a adjudicar en los méritos la presunta ilegalidad. Petición de certiorari, pág. 9.
El 21 de octubre de 2011 expedimos el auto solicitado. Con el beneficio de la comparecencia de ambas partes, pa-samos a resolver la controversia que nos ocupa.
II
A. La Cuarta Enmienda de la Constitución de Estados Unidos, así como la Constitución de Puerto Rico, protegen el derecho del Pueblo contra la intromisión indebida y arbitraria del Estado en sus casas, papeles y efectos. Específicamente, la Cuarta Enmienda de la Constitución federal dispone:
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S.C.A. Const. Amend. IV.
Por su parte, la Constitución de Puerto Rico amplia(7) esta protección estableciendo como sigue:
No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautacio-nes y allanamientos irrazonables.
No se interceptará la comunicación telefónica.
*573 Solo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial y ello única-mente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a regis-trarse, y las personas a detenerse o las cosas a ocuparse.
Evidencia obtenida en violación de esta sección será inadmi-sible en los tribunales.(8)
En nuestro ordenamiento jurídico, esta protección cons-titucional se considera un valor comunitario de indiscuti-ble jerarquía y, según hemos hilvanado jurisprudencial-mente, consagra varios propósitos fundamentales. Pueblo v. Valenzuela Morel, 158 D.P.R. 526 (2003).(9) Uno de estos propósitos es disuadir y desalentar a los funcionarios del orden público de incurrir en conducta que viole esta dispo-sición, para así preservar la integridad judicial y evitar la complicidad de los tribunales con respecto a actos de des-obediencia a la Constitución. íd. pág. 539. De igual forma, encarna el principio de impedir al ente gubernamental be-neficiarse de sus actos ilícitos, pues lo contrario resultaría en un menoscabo de la confianza de la ciudadanía en las instituciones que le gobiernan. íd.
En consonancia con la Carta de Derechos de nuestra Constitución, es un axioma jurídico que “todo registro que se efectúe sin una orden judicial se presume irrazonable, correspondiéndole entonces al Estado demostrar su validez”. Blassini et als. v. Depto. Rec. Naturales, 176 D.P.R. 454, 462 (2009); Pueblo v. Serrano Reyes, 176 D.P.R. 437, 449 (2009); E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Forum, 1991, Vol. 1, Sec. 6.1, pág. 281. Así, “[l]a regla general es ... que todo registro, allanamiento o incautación que se realice, no importa su índole penal o administrativa, es irrazonable per se de llevarse a cabo sin orden judicial previa”. E.L.A. v. *574 Coca Cola Bott. Co., 115 D.P.R. 197, 207 (1984). La eviden-cia obtenida en contravención a la cláusula constitucional aludida no tendrá acceso a los tribunales. En otras pala-bras, la prueba que los funcionarios del Estado hayan re-copilado mediante un registro, allanamiento o incautación realizada en contravención al mandato constitucional será inadmisible para probar la comisión de un acto delictivo. Blassini et als. v. Depto. Rec. Naturales, supra; Pueblo v. Serrano Reyes, supra. La presencia expresa de esta regla de exclusión en la Constitución de Puerto Rico tiene el efecto inmediato de que no puede ser abolida por la juris-prudencia ni por la Asamblea Legislativa ya que para ello se necesitaría una enmienda constitucional. E.L. Chiesa, Derecho procesal penal: etapa investigativa, San Juan, Pubs. JTS, 2006, pág. 118.
Ahora bien, es preciso que examinemos cuándo se con-figura un registro, una incautación o un allanamiento que viole el derecho de la ciudadanía a la protección de su persona, casas y papeles. Para responder tal interrogante es imperativo atender las instancias en que una persona puede reclamar el mencionado derecho.
Años atrás, en la jurisdicción federal prevalecía la percepción de que el precepto constitucional que prohíbe los registros y allanamientos irrazonables salvaguardaba únicamente el interés que las personas poseían sobre su propiedad, fundamentándose en el concepto de “trespass” o de penetración en el lugar protegido.(10) Posteriormente, en la decisión Katz v. United States, 389 U.S. 347, 351 (1967), el Tribunal Supremo de Estados Unidos encauzó su análisis al determinar que la Cuarta Enmienda de la Constitución federal no protegía a los lugares sino a las personas, siempre y cuando estas exhibieran una expectativa *575 razonable de privacidad(11) en cuanto al bien o al lugar en que intervino el Estado.(12) No obstante, en United States v. Jones, 132 S.Ct. 945, 181 L. Ed.2d 911 (2012), se aclaró recientemente que Katz no pretendió rechazar el plantea-miento de que la Cuarta Enmienda también protegía el derecho de las personas contra la intromisión física de los agentes del Estado en determinada propiedad. El Tribunal explicó que, más bien, el derecho a la intimidad no era el único interés albergado.(13)
En Puerto Rico hemos resuelto que la cláusula constitucional que prohíbe los registros y allanamientos irrazonables ampara la intimidad de los seres humanos.(14) Pueblo v. Díaz, Bonano, 176 D.P.R. 601, 613 (2009); Rullán v. Fas Alzamora, 166 D.P.R. 742, 772 (2006); E.L.A. v. Coca Cola Bott. Co, supra. Similar enfoque está arraigado en Puerto Rico ya desde la confección de nuestra Constitución. Así surge de las expresiones de la Comisión de la Carta de Derechos de la Convención Constituyente cuando, al explicar la Sec. 10 del Art. II de la Constitución, L.P.R.A., Tomo 1, razonó como sigue:
La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. El hogar, *576 los muebles y utensilios, los libros y papeles poseídos por un ciudadano son como una prolongación de su persona, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en este círculo privado equi-vale para todo hombre a una violación de su personalidad. Lo mismo acontece con los medios en que se expresa su intimidad y que reserva tan sólo para algunos: su correspondencia, sus manifestaciones espontáneas a través de los modernos medios mecánicos de comunicación. La lesión de la intimidad es en este sentido el más penoso ataque a los derechos fundamenta-les de la personal(15)
En armonía con lo anterior, hemos reconocido que la protección constitucional en discusión se extiende a la vida íntima y a la santidad del hogar, comprendiendo lo que se ha denominado como “una prolongación de la persona”, protegiendo a ambas y no a la propiedad en sí. Pueblo v. Valenzuela Morel, supra, págs. 538-539. Véase, además, O.E. Resumil de Sanfilippo, Práctica jurídica de Puerto Rico: derecho procesal penal, Orford, Ed. Equity, 1990, T. 1, pág. 205. En otras palabras, determinamos que la cláusula constitucional que veda los registros y allanamientos irra-zonables por parte del Estado “no entraña un derecho propietario”. Pueblo v. Valenzuela Morel, supra, pág. 539. Véase, además, Pueblo v. Vargas Delgado, 105 D.RR. 335 (1976).
En ese contexto, siguiendo el raciocinio de Katz, para que un individuo pueda reclamar el resguardo que le ofrece la Sec. 10 del Art. II de nuestra Carta de Derechos, supra, es necesario que albergue una expectativa razonable de intimidad sobre el objeto o lugar que ha sido registrado o allanado; es decir, que exista un interés personal sobre las propiedades de que se trate. Véase Pueblo v. Díaz, Bonano, supra, pág. 612, y casos allí citados. Es por ello que el mero hecho de que el Estado intervenga con un ciudadano no activa automáticamente la protección constitucional. Con ese fin, es inexorablemente necesario *577 comprobar si el individuo que alega haber sido afectado alberga un interés personal de tal envergadura. Blassini et als. v. Depto. Rec. Naturales, supra, pág. 464. Con ese marco doctrinal, examinemos los preceptos que deben analizarse para descifrar cuándo se posee dicha expectativa.
En primer lugar, una expectativa razonable de intimidad implica que la persona haya exhibido una expectativa subjetiva de intimidad; no una simple reserva mental, sino una conducta de actos afirmativos que demuestren de manera inequívoca la intención de alojar dicha expectativa. Pueblo v. Ortiz Rodríguez, 147 D.P.R. 433, 442 (1999).(16) En segunda instancia, la sociedad tiene que reconocer esa expectativa individual como razonable. íd.
Como pertinente a la controversia que atendemos, igualmente se ha señalado que los ocupantes que se encuentren legítimamente en una propiedad cuando se registra o allana —tales como inquilinos, visitantes del dueño de una residencia o quienes pernoctan en un cuarto de hotel— albergan una expectativa razonable de privacidad en dicho lugar. Véase 6 LaFave, Search and Seizure: A Treatise on the Fourth Amendment Sec. 11.3(a), págs. 132—133 (2004). Sobre ello, en Pueblo v. Ramos Santos, 132 D.P.R. 363, 372 (1992), acogimos las expresiones pronunciadas por el Tribunal Supremo de Estados Unidos en Minnesota v. Olson, 495 U.S. 91, 98 (1990), respecto a los visitantes:
We stay in others’ homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a *578 houseguest has a legitimate expectation of privacy in his host’s home.
Contrario es el caso de quien se encuentra ilegalmente en una propiedad. En ese caso hemos resuelto que no se alberga expectativa de intimidad alguna. Pueblo v. Ramos Santos, supra, págs. 371-372. Ante esa situación, corres-pondería entonces al agraviado demostrar que se encon-traba legalmente en el lugar registrado o allanado. Id. Re-cordemos que dos de los criterios para evaluar si alguien posee una expectativa razonable de intimidad sobre una propiedad particular es determinar si esta persona tiene acceso legítimo a la propiedad y si puede excluir a los de-más de su uso. Rawlings v. Kentucky, 448 U.S. 98 (1980); Rakas v. Illinois, 439 U.S. 128 (1978). Véase, también, Resumil de Sanfilippo, op. cit, págs. 315-316.(17)
Hemos visto que en referencia a lugares, la Constitución protege a las personas que abrigan un interés personal o una expectativa de intimidad razonable, según lo reco-nozca la sociedad. Ahora bien, nos resta exponer quién tiene la prerrogativa de solicitar la supresión de evidencia fundamentándose en que ocurrió un registro y allana-miento irrazonables.
Nos señala el profesor Chiesa Aponte que solo a quien se le ha violado el derecho constitucional a la protección contra detenciones, registros o incautaciones irrazonables, puede invocar la regla de exclusión, ya que este es el remedio a la disposición de quien sufre la violación de su derecho constitucional. E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 (Núm. 1) Rev. Jur. *579 U.P.R. 83, 128 (1996).(18) Así lo establecimos en Pueblo v. Ramos Santos, supra, pág. 374, cuando enunciamos que según los hechos particulares de ese caso, “[e]l acusado no tenía legitimación activa para solicitar [la] supresión, pues carecía de una expectativa legítima de privacidad”. (Énfa-sis nuestro). Esa conclusión es consecuente con las expre-siones consignadas en el Informe de la Comisión de la Carta de Derechos de la Convención Constituyente, cuando al emitir sus posturas concernientes a la Sec. 10 del Art. II de la Carta de Derechos de la Constitución de Puerto Rico, supra, aludió al derecho en discusión como un derecho que es personal(19) De la misma forma se pronun-ció el Tribunal Supremo de Estados Unidos, refiriéndose a la Cuarta Enmienda de la Constitución federal:
Fourth amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees [of U.S. Const. Amend. IV], it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule’s protections. (Citas omitidas)(20)
Es decir, el derecho a la supresión de evidencia funda-mentado en las consideraciones constitucionales expuestas es un derecho personal que solo puede invocarlo su titular. En Puerto Rico, “ ‘no hay factura más ancha’ en cuanto a la *580 exigencia de standing”. Chiesa, supra, pág. 129.(21) Así, he-mos puntualizado que
[e]s esta expectativa razonable de intimidad la que es prote-gida por la disposición constitucional. Por esto, si estamos ante la intervención del Estado con el individuo, hay que de-terminar si la persona, en efecto, tiene el derecho de abrigar la expectativa razonable de que su intimidad sea respetada para que entonces sea acreedor de la protección constitucional. (Enfasis suplido). Rullán v. Fas Alzamora, supra, pág. 772.
Esto “constituye la piedra de toque de esta doctrina constitucional”. Pueblo v. Soto Soto, 168 D.P.R. 46, 55 (2006).
Evidentemente, una de las virtudes que confiere ser acreedor de los derechos que otorga la protección contra los registros y allanamientos irrazonables es solicitar que se excluya la evidencia obtenida en contravención a la protec-ción misma.
B. Ya adelantamos que en nuestro ordenamiento jurídico pueden ocurrir inspecciones o registros, tanto de índole penal como administrativa. Una inspección administrativa es aquella que se perpetra a través de la presencia física de un funcionario administrativo en la propiedad privada de una persona natural o jurídica que se dedique a una actividad o negocio regulado por el Estado. Blassini et als. v. Depto. Rec. Naturales, supra, pág. 493. Conforme a la Sec. 6.1 de la referida Ley Núm. 170-1998 (3 L.P.R.A. sec. 2191), se le confirió a las agencias administrativas potestad de realizar inspecciones para asegurarse del cumplimiento de las leyes y los reglamentos que administran, así como de las resoluciones, órdenes y autorizaciones que expidan sin previa orden de registro o allanamiento, únicamente en los casos siguientes:
(a) En casos de emergencias, o que afecten la seguridad o *581 salud pública;
(b) al amparo de las facultades de licénciamiento, concesión de franquicias, permisos u otras similares;
(c) en casos en que la información es obtenible a simple vista o en sitios públicos por mera observación.
Como observamos, el estatuto enumeró taxativamente las instancias en que una agencia administrativa puede efectuar un registro sin una orden previa. No obstante, es conocido que estas tienen la potestad de promulgar regla-mentos para regir las encomiendas que se les delegó, claro está, dentro del marco de lo estatuido en la precitada ley.(22)
Concerniente al recurso que hoy atendemos, el DRNA es la agencia responsable de implementar la política pública contenida en la Sec. 19 del Art. VI de la Constitución de Puerto Rico, L.P.R.A., Tomo l.(23) Para que pudiera cumplir su cometido, la Ley Núm. 1 de 29 de junio de 1977, Ley de Vigilantes de Recursos Naturales y Ambientales del Departamento de Recursos Naturales y Ambientales, 12 L.P.R.A. see. 1201 et seq., creó en el DRNA un organismo con funciones de supervisión, protección, conservación, defensa y salvaguarda de los recursos naturales. Esta pieza legislativa amplió, a su vez, la facultad fiscalizadora del DRNA al consignar en su Art. 5(b)(2) que el Cuerpo de Vigilantes tiene la facultad de arrestar por tentativa o violación a las leyes que administra —cuando ello se haya cometido en su presencia— aplicando en ese sen- *582 tido las leyes que regulan a los agentes del orden público.(24) Además, y de notable importancia a la contro-versia que atendemos, se postula que estos funcionarios podrán entrar en propiedades y aguas del Estado sin que ello constituya trasgresión. Empero, la entrada a propieda-des privadas requiere indefectiblemente el permiso previo del dueño del terreno, excepto en los casos que establece la Sec. 6.1 de la Ley 170-1998, supra, a la cual nos referimos inicialmente.
Es trascendental acentuar que estos registros administrativos o “reglamentarios” también se encuentran delimitados por la normativa atinente a los registros y allanamientos irrazonables. Véase Blassini et als. v. Depto. Rec. Naturales, supra. El hecho de que en una agencia administrativa se tramiten procedimientos de manera más flexible no es razón para obviar dichos mandamientos de arraigo constitucional. D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Forum, 2001, Sec. 5.3, págs. 227-228. Acorde con esto, la necesidad de que los vigilantes cuenten con el permiso previo del dueño para poder irrumpir en una finca privada tiene el propósito de salvaguardar la constitucionalidad de las acciones fiscalizadoras del DRNA. Blassini et ais. v. Depto. Rec. Naturales, supra, pág. 469. Así, por ejemplo, en el antedicho caso se presentó una controversia un tanto similar a la que nos ocupa hoy, y establecimos que los vigilantes del DRNA no pueden intervenir con los cazadores en cualquier tiempo y lugar, sino que para ello es necesario que los vigilantes tengan derecho a estar en el lugar en que intervienen con los cazadores. Id., pág. 470. Es por eso que la entrada de los vigilantes a una propiedad privada sin el consentimiento previo del dueño, sin una orden judicial previa o sin que se cumpla con los requisitos establecidos en el Art. 6.1 de la *583 Ley 170-1998, supra, está vedada en nuestro ordenamiento jurídico. Blassini et als. v. Depto. Rec. Naturales, supra, pág. 474.
C. La Ley 170-1998 también regula lo concerniente al procedimiento adjudicativo que se lleva a cabo ante las agencias administrativas. Ciertamente, aunque estos procesos se caracterizan por ser flexibles y económicos, les son oponibles las garantías mínimas que exige el debido proceso de ley, ya que las decisiones administrativas tienen el alcance de afectar los intereses propietarios o libertarios de las personas. Com. Seg. v. Real Legacy Assurance, 179 D.P.R. 692, 706 (2010); Almonte et al. v. Brito, 156 D.P.R. 475, 481 (2002). Esto debe ser así ya que una vista administrativa es el equivalente a un juicio en los tribunales, por lo que inexorablemente debe ajustarse al requisito fundamental de que sea un proceso justo, tal como se ha conducido en los foros adjudicativos desde antaño. Com. Seg. v. Real Legacy Assurance, supra, pág. 707.(25) Así pues, para hallar la verdad y hacer justicia en todo proceso adjudicativo formal se vindicarán, entre otros, el derecho a ser oído y presentar prueba oral y escrita, a confrontarse con los testigos, a obtener una adjudicación imparcial y a que la decisión se base en el expediente.(26) Sec. 3.1 de la Ley 170-1998 (3 L.P.R.A. sec. 2151); Magriz v. Empresas Nativas, 143 D.P.R. 63 (1997). Amerita recalcar que el expediente de la agencia constituirá la base exclusiva para la decisión del procedimiento adjudicativo, así como para una posterior revisión. Sec. 3.18 de la Ley 170-1998 (3 L.P.R.A. sec. 2168).
Por su parte, en el caso que nos ocupa, el DRNA adoptó el Reglamento Núm. 6442, conocido como el Reglamento de *584 Procedimientos Administrativos del DRNA.(27) Este, en su Art. 27.7, dispone que durante una vista administrativa el representante del interés público tiene la responsabilidad de probar que la violación imputada ocurrió según se alegó en la orden o querella que dio lugar al procedimiento. Id. Además de esto, la agencia tiene la carga de probar que la penalidad aplicada es la apropiada. íd. Así pues, una vez se haya establecido un caso prima facie contra el querellado, este último tiene la responsabilidad de presentar y soste-ner cualquier defensa a su favor. íd.
Por último, nos resta exponer la delimitación de nuestra facultad revisora en cuanto a las decisiones administrativas. Como regla general, al revisar la decisión daremos deferencia a las determinaciones de hecho razonables de la agencia, esto es, que estén sustentadas con evidencia sustancial. Sec. 4.5 de la Ley 170-1988 (3 L.P.R.A. sec. 2175). Véase, también, Otero v. Toyota, 163 D.P.R. 716 (2005). Tengamos presente que evidencia sustancial es aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión. íd. El propósito principal de esta doctrina es evitar sustituir el criterio del organismo administrativo especializado por el del foro judicial revisor. Hernández, Alvarez v. Centro Unido, 168 D.P.R. 592, 615 (2006); P.C.M.E. v. J.C.A., 166 D.P.R. 599, 615 (2005). No obstante, tal deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. Otero v. Toyota, supra, pág. 729. En caso de que no nos encontremos ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, se debe sostener la que seleccionó la agencia concernida, íd. Sin embargo, podemos revisar las conclusiones de derecho en todos sus aspectos. Sec. 4.5 de la Ley 170-1998, *585 supra. Empero, en ese ejercicio, es imperioso otorgar gran peso y deferencia a las interpretaciones que realiza una agencia en cuanto a los reglamentos y leyes que administra. Hernández, Álvarez v. Centro Unido, supra, pág. 615. Al ser así, si la interpretación legal concebida es razonable, debemos acatarla, cosa que no ocurrirá en caso de que el organismo administrativo: (1) haya errado en la interpretación de la ley; (2) actúe arbitraria, irrazonable o ilegalmente, o (3) lesione los derechos constitucionales fun-damentales de los ciudadanos. íd., pág. 616.
III
En el presente caso se cuestiona la legitimación de los recurridos para alegar que se infringieron sus derechos constitucionales, fundamentándose en la protección contra los registros y allanamientos irrazonables. Sostiene el Es-tado que el foro apelativo debió pasar juicio sobre ese asunto antes de dirimir los méritos de la controversia.
Como discutimos, la prohibición a los Vigilantes del DRNA, en cuanto a que no pueden acceder a fincas priva-das sin el consentimiento del dueño, existe para vindicar el derecho constitucional de las personas contra los registros y allanamientos irrazonables. Por lo tanto, al ser esto así, se deduce que cualquier defensa que se presente para im-pugnar las actuaciones de los vigilantes, cuya base sea el quebrantamiento de dicho derecho, debe ir enmarcada dentro del desarrollo jurisprudencial referente a esta ga-rantía constitucional. Así pues, si bien resolvimos en Blas-sini et ais. que los vigilantes deben tener derecho a estar en el lugar en que intervienen con los cazadores, no toda persona está legitimada para presentar una defensa ba-sada en que estos penetraron una finca privada sin per-miso del dueño. Arribamos a tal conclusión puesto que, se-gún expusimos, la cláusula constitucional que protege a los ciudadanos contra los registros y allanamientos irrazona- *586 bles protege el derecho de intimidad que posea el agra-viado en el lugar que ha sido registrado o allanado. Esto significa que solo tal persona es acreedora de exigir lo que la Sec. 10 del Art. II de nuestra Constitución, supra, concede, esto es, la exclusión en un procedimiento judicial de toda evidencia que tenga relación con la intervención ilegal del Estado.
El caso que nos ocupa no presenta un cuadro conforme a las doctrinas esbozadas. Nótese que aquí los recurridos lo que alegan es que los vigilantes no tenían permiso para entrar a la finca donde fueron intervenidos. En los proce-dimientos ante la agencia, los recurridos no ofrecieron prueba suficiente para demostrar que poseían expectativa de intimidad alguna sobre la finca Toro Farms. Si bien la jurisprudencia reconoce que en virtud de la garantía cons-titucional contra los registros y allanamientos irrazonables un visitante tiene la expectativa de que su intimidad no será perturbada por personas ajenas a su anfitrión(28) los cazadores recurridos no lograron convencer a la agencia administrativa de que estaban en esa finca con la anuencia de su dueño. Veamos.
El Reglamento Núm. 6765 del DRNA, conocido como el Reglamento para Regir la Conservación y el Manejo de la Vida Silvestre, las Especies Exóticas y la Caza en el Estado Libre Asociado de Puerto Rico(29) prohíbe cazar en fincas privadas sin el permiso del dueño y añade que el cazador deberá proveer información sobre el nombre, número de teléfono y lugar donde se pueda contactar al dueño o a la persona que le autorizó, de manera que dicha autorización se pueda corroborar posteriormente. Según el testimonio del vigilante Rivera, la autorización de los recurridos para cazar en Toro Farms nunca pudo corroborarse. En la vista este atestiguó:
*587 De la misma finca, de la misma finca, procedemos a comuni-carnos con el señor Toro, como es información corroborable, nosotros procedemos a llamarlo a él y él indica que no ha au-torizado a nadie. Por eso es que yo procedo a expedir los boletos. Porque él no autorizó a nadie.(30)
Los recurridos atestiguaron lo contrario, pero no nos en-contramos en posición de sustituir el criterio del DRNA en cuanto a la credibilidad que la agencia le otorgó a sus testimonios. La decisión de la agencia en cuanto a esta determinación de hechos en particular no fue irrazonable ni arbitraria, por lo que le damos deferencia. Recuérdese que el Sr. Milton Toro, alegado dueño de la finca, tampoco fue llevado a la audiencia para que ofreciera su versión de los hechos. De esta manera es ineludible la conclusión de que los recurridos no eran personas con un interés prote-gido sobre ese predio. En este caso los vigilantes entraron a la finca Toro Farms, sobre la cual los recurridos no demos-traron albergar ningún tipo de interés o expectativa de in-timidad al no probar que se encontraban legítimamente allí.(31) Por lo tanto, la conducta de dichos agentes no com-prometió ninguna expectativa razonable de intimidad alo-jada por los recurridos. De igual manera, estos tampoco demostraron poseer control, dominio o posesión legítima sobre la finca Toro Farms de manera que el Estado estu-viera impedido de invadirla sin su previo consentimiento o sin que se emitiera una orden judicial al efecto.
Concluido lo anterior, y teniendo en cuenta que una persona que se encuentre ilegalmente en un lugar no tiene expectativa razonable de intimidad que se deba proteger, *588 es forzoso colegir que el Tribunal de Apelaciones erró al concluir que los recurridos podían presentar una defensa amparada en la disposición constitucional que prohíbe los registros y allanamientos irrazonables, ya que no tenían legitimación para presentarla. Ahora bien, aunque hemos colegido que le asiste la razón a la peticionaria en cuanto a ese aspecto, lo anterior no dispone de la controversia. La Oficina del Procurador General también nos solicita que, conforme a esa conclusión, revoquemos en su totalidad la sentencia del foro apelativo. Sin embargo, como veremos, ello no es suficiente para acceder a lo solicitado. El hecho de que los recurridos no pudieran presentar esa defensa no significa que estuvieran impedidos de litigar su caso ante el DRNA.
En la controversia que nos ocupa se imputó a los recu-rridos cometer la falta de cazar en una finca privada sin el permiso del dueño. Conforme al Reglamento de Procedi-mientos Administrativos del DRNA, la agencia tenía el peso de la prueba para sostener las sanciones impuestas a los cazadores. Es decir, una vez los recurridos impugnaron los boletos, le incumbía al representante del interés pú-blico presentar prueba preponderante para sostener la va-lidez de las faltas administrativas imputadas. La Nueva Ley de Vida Silvestre, Ley 241-1999 define “caza deporti-va” en su Art. 1.07 como la “[a]ctividad recreativa autori-zada por el Secretario en la cual el participante, llamado cazador deportivo, utiliza un arma para hacer presa un animal de caza durante las temporadas establecidas por el Secretario”.(32) Por lo tanto, era indispensable que se pre-sentara prueba referente a que los recurridos incurrieron en dicha actividad en la finca donde fueron interceptados por los vigilantes, para que se pudiera establecer un caso prima facie en su contra.
Como sabemos, en los procedimientos adjudicativos que se llevan a cabo en las agencias administrativas no aplican *589 las reglas de evidencia de la manera en que operan en los tribunales, pero, los principios fundamentales de estas se podrán utilizar para lograr una solución más rápida y eco-nómica de la controversia. Véase Sec. 3.13(f) de la Ley 170-1998 (3 L.P.R.A. sec. 2163(f)). Así también lo establece el Reglamento de Procedimientos Administrativos del DRNA en su Art. 27.3c.(33)
Un principio recogido en la Regla 110(H) de Evidencia de Puerto Rico es que un hecho puede probarse ya sea me-diante evidencia directa o evidencia circunstancial. 32 L.P.R.A. Ap. VI, R. 110(h). Esa disposición establece que
[cjualquier hecho en controversia es susceptible de ser de-mostrado mediante evidencia directa o mediante evidencia in-directa o circunstancial. Evidencia directa es aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquélla que tiende a demostrar el hecho en controversia pro-bando otro distinto, del cual por sí o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia.
Como bien menciona esta regla, la evidencia directa es aquella que prueba el hecho en controversia sin que medie inferencia o presunción, y que de ser cierta, demuestra el hecho de modo concluyente. En palabras del profesor Chiesa, este tipo de evidencia se refiere a “aquella que de ser creída por el juzgador, establece el hecho a ser probado sin ulterior consideración”. E.L. Chiesa, Reglas de Evidencia de Puerto Rico 2009, San Juan, Pubs. JTS, 2009, pág. 102. Por otro lado, la característica fundamental de la prueba circunstancial es que, aunque fuera creída, no es por sí suficiente para probar el hecho. Admor. F.S.E. v. Almacén Ramón Rosa, 151 D.P.R. 711, 719 (2000). Más bien, *590 en esos casos se requiere un proceso de inferencias razona-bles o un razonamiento basado en la experiencia, lo que en unión a otra evidencia, podría llevar al juzgador a concluir que ocurrió un hecho particular. Id. Se ha reconocido que la prueba circunstancial es intrínsecamente igual que la prueba directa y, por lo tanto, se evalúan según el mismo criterio. íd., pág. 720 y casos allí citados. Al ser así, ambos tipos de prueba son factibles para probar un hecho ya sea en un litigio civil o criminal, y añadimos, en uno administrativo. Id., pág. 720. Dentro de esta perspectiva, contestemos la interrogante de si se llegó a establecer un caso prima facie en contra de los recurridos.
Durante la vista administrativa de este caso única-mente se presentó prueba testimonial. La misma consistió en los testimonios de los cazadores recurridos y el testimo-nio del vigilante Rivera, quién atestiguó por parte del DRNA. Si bien la prueba que allí se presentó apoyó la con-clusión de que los vigilantes intervinieron con los recurri-dos en la finca Toro, entendemos que esta no fue suficiente para poder dictaminar que los recurridos cometieron la in-fracción de cazar ilegalmente en ese lugar.
El DRNA tenía la obligación de demostrar, ya fuera me-diante evidencia directa o evidencia circunstancial, que los recurridos cazaron en la finca Toro. Durante la vista no se presentó evidencia directa sobre ese particular, pues el propio vigilante Rivera atestó que no vio a los recurridos “matar ningún animal”.(34) Por lo tanto, la evidencia que presentó el DRNA en cuanto a esto fue más bien circuns-tancial y consistió en el testimonio de este mismo vigilante a los efectos de que encontró a los recurridos en la finca Toro, con armas de caza y con ciertas presas. Por su parte, en todo momento durante la vista administrativa estos úl-timos indicaron que estuvieron cazando en la finca Ruiz y que solo pasaron a la finca Toro para recoger el producto de *591 la caza. Conforme a lo anterior, entendemos que la prueba circunstancial ofrecida por el DRNA no es suficiente para que se sostengan las multas expedidas en contra de los recurridos por haber cazado en la finca Toro sin permiso de su dueño, pues la misma no está apoyada por otra prueba que nos lleve a concluir razonablemente que ello ocurrió así y no existe en el expediente otra evidencia sustancial que apoye una determinación contraria a esta. En conclu-sión, al examinar la transcripción de la vista administra-tiva observamos que la prueba presentada por el DRNA no constituyó “evidencia sustancial” en cuanto a las faltas que se imputaron a los recurridos.
El análisis que precede nos conduce a modificar la sen-tencia del Tribunal de Apelaciones en cuanto a que los ca-zadores no poseían legitimación para impugnar la entrada de los vigilantes en la finca Toro Farms, ya que dicha de-fensa opera en función de la expectativa razonable de inti-midad o el interés personal que estos tuvieran sobre esa propiedad, cosa que no se logró establecer en este caso. Por otro lado, aunque por distintos fundamentos, sostenemos la determinación del foro intermedio referente a que en el expediente administrativo no obró prueba sustancial que sostuviera la validez de las penalidades emitidas contra los recurridos.
IV
Por los fundamentos antes expuestos, se modifica la sentencia del Tribunal de Apelaciones para disponer que los recurridos no tienen legitimación para solicitar el ar-chivo de las faltas administrativas fundamentándose en una violación al derecho constitucional que prohíbe los re-gistros y allanamientos irrazonables. Esto es así, ya que no poseían una expectativa razonable de intimidad ni interés alguno sobre la finca allanada. Así modificado, se confirma el dictamen recurrido.

*592
Se dicta sentencia de conformidad.

 Según discutiremos más adelante, hubo controversia en cuanto a este hecho particular.

 Apéndice, pág. 119.

 Trascendió en la vista administrativa que para probar que se había presen-tado la querella, el representante del Departamento de Recursos Naturales y Am-bientales (DRNA) ofreció únicamente la copia del documento que evidenciaba el re-cibimiento de la llamada del Sr. Milton Toro, razón por la cual la Oficial Examinadora no lo admitió como evidencia. Empero, el vigilante Rivera testificó sobre su conocimiento en cuanto a la llamada, aunque mencionó que no la había atendido personalmente. La importancia de esa querella radicaba en que era en esta que los vigilantes se amparaban para sostener que estaban autorizados para entrar a la finca.

 Por otra parte, la agencia dictaminó que los vigilantes podían entrar e ins-peccionar la finca Toro Farms en virtud de las disposiciones legislativas que permi-ten a las agencias administrativas inspeccionar y fiscalizar todas aquellas activida-des que les compete regular. Esta interpretación fue descartada por el Tribunal de Apelaciones por no estar conforme con la jurisprudencia establecida en Blassini et als. v. Depto. Rec. Naturales, 176 D.P.R. 454 (2009), donde dispusimos que la caza deportiva no es una actividad estrechamente reglamentada por el Estado.

 En su recurso de revisión judicial señalaron los errores siguientes:
1. “Erró el DRNA en vista de los hechos que la evidencia obtenida por el DRNA es admisible en virtud de la sección 6.1 de la Ley de procedimientos Administrativos Uniformes, 3 L.P.R.A. see. 2191”.
*571 2. “Erró el DRNA al entender que el caso de H.C.M.A. (P.R.), Inc. etc. v. Contralor, 133 D.P.R. 945 valida el registro ilegal por parte de los agentes del DRNA”.
3. “Erró el DRNA en la interpretación y aplicación de la doctrina en Pueblo v. Ferreira Morales, 147 D.P.R. 238 (1998)”.
4. “Erró el DRNA al entrar a resolver sobre la evidencia ilegalmente obtenida por agentes del DRNA si el fundamento descanza (sic) sobre la sección 6.1 de la Ley de Procedimiento Administrativo Uniforme (supra) Y el caso de Pueblo vs. Ferreira Morales, 147 DPR 238 (1998)”.
5. “Erró el DRNA al admitir prueba de todos modos inadmisible”.
6. “Erró el DRNA al permitir violar el debido proceso de ley en el presente caso y ganar acceso a prueba fuera del registro”.
7. “Erró el DRNA en la creación de derecho o aplicación de derecho por analogía”.
8. “Erró el DRNA en su argumentación [sic] sobre aspectos de dificultad para hacer su trabajo”. Apéndice, pág. 70.

 Durante la vista administrativa la Oficial Examinadora denegó la admisión en evidencia de la copia del documento que evidenciaba la querella presentada por el Sr. Milton Toro, por no ser el documento original. Así, pues, esta se propuso tomar conocimiento oficial del contenido del expediente administrativo. En cuanto a esto, el Tribunal de Apelaciones señaló que la Oficial Examinadora erró al proceder de esa manera, puesto que la existencia de la querella era un hecho que se encontraba en controversia, por lo que no se podía tomar conocimiento oficial de este.

 Se cataloga la Constitución de Puerto Rico como una de factura más ancha. Véase E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 (Núm. 1) Rev. Jur. U.P.R. 83 (1996).

 Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, págs. 326-327.

 Véanse, también: Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 D.P.R. 352, 358-359 (1992); E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Vol. 1, Sec. 6.2, pág. 285.

 Véanse: United States v. Jones, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012); E.L. Chiesa, Derecho procesal penal, etapa investigativa, San Juan, Pubs. JTS, 2006, págs. 102-108.

 La jurisprudencia puertorriqueña utiliza en ocasiones el término “privaci-dad” e “intimidad” como sinónimos. En la jurisdicción de Estados Unidos se utiliza el termino “privacy” de manera uniforme. Véase J.J. Álvarez González, Derecho cons-titucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 694.

 Este análisis surge de la opinión concurrente del Juez Harlan en ese caso.

 En este caso se mencionó lo siguiente: “a trespass on ‘houses’ or ‘effects,’ or a Katz invasion of privacy, is not alone a search unless it is done to obtain information; and the obtaining of information is not alone a search unless it is achieved by such a trespass or invasion of privacy”. United States v. Jones, supra, esc. 5.

 Téngase presente que en Puerto Rico el derecho a la intimidad es consus-tancial a la declaración constitucional relativa a la inviolabilidad de la dignidad del ser humano establecida en la Sec. 1 del Art. II de la Constitución de Puerto Rico y en la See. 8 del Art. II, L.P.R.A., Tomo 1, ed. 2008, pág. 317, que dispone que “[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar”. En ese sentido, la protección constitucio-nal contra los registros y allanamientos irrazonables surge también de ambas secciones. Pueblo v. Soto Soto, 168 D.P.R. 46, 53 esc. 5 (2006); Rullán v. Fas Alzamora, 166 D.P.R. 742, 770-771 (2006).

 4 Diario de Sesiones de la Convención Constituyente 2567 (1952).

 Véanse, además: Pueblo v. Bonilla, 149 D.P.R. 318 (1999); Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991); Pueblo v. Lunzón, 113 D.P.R. 315 (1982); U.S. v. Dunn, 480 U.S. 294 (1987).

 Otros de los criterios son:
1. Si el lugar registrado es uno donde una persona prudente y razonable puede esperar que esté exenta de intrusión gubernamental.
2. Si la persona ha tomado algunas medidas o precauciones para mantener su privacidad en el lugar registrado.
3. Si la persona razonablemente espera estar protegida en su intimidad en el lugar registrado.

 Véase, también, D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 9na ed., San Juan, Inst, para el Desarrollo del Derecho, 2011, Sec. 7.38, pág. 87.

 En el informe se menciona que “[l]as garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal”. Diario de Sesiones, supra, págs. 2567-2568.

 Rakas v. Illinois, 439 U.S. 128, 133-134 (1978).

 Véase Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, op. cit., pág. 315.

 Véase Sec. 1.2 de la Ley 170-1998 (3 L.P.R.A. sec. 2101).

 Según dispone el Art. 3 de la Ley Orgánica del Departamento de Recursos Naturales y Ambientales, Ley Núm. 23 del 20 de junio de 1972 (3 L.P.R.A. secs. 151 y 153). Esta disposición constitucional preceptúa:
“Será política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mis-mos para el beneficio general de la comunidad; la conservación y mantenimiento de los edificios y lugares que sean declarados de valor histórico o artístico por la Asam-blea Legislativa; reglamentar las instituciones penales para que sirvan a sus propó-sitos en forma efectiva y propender, dentro de los recursos disponibles, al trata-miento adecuado de los delincuentes para hacer posible su rehabilitación moral y social”. Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 440.

 Véase 12 L.P.R.A. sec. 1205(b)(2).

 Citando a B. Swartz, Administrative Law, 3ra ed., Boston, Ed. Little Brown, 1991, pág. 311 y a D. Fernández Quiñones, Derecho administrativo y Ley de Proce-dimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 155.

 El “expediente” comprende los documentos que no hayan sido materia exenta de divulgación por una ley y otros materiales relacionados con un asunto que esté o haya estado ante la consideración de la agencia. 3 L.P.R.A. sec. 2102(c).

 Reglamento Núm. 6442 de 26 de abril de 2002.

 Pueblo v. Ramos Santos, 132 D.P.R. 363, 372 (1992).

 Reglamento Núm. 6765 del Departamento de Estado de 11 de febrero de 2004.

 Transcripción de la vista administrativa del 29 de mayo de 2009, CD. #1, pág. 25, Apéndice, Pieza 2, pág. 475.

 Durante la vista administrativa, los recurridos testificaron que los vigilantes registraron sus bultos y pertenencias. No obstante, su contención principal tra-taba sobre la autoridad de los vigilantes para entrar a la finca en la que fueron intervenidos. Aun así, de su propio testimonio surge que si bien en un principio cuestionaron el registro que se llevó a cabo en cuanto a sus efectos, posteriormente, estos consintieron a este. Véase Transcripción de la vista administrativa del 10 de febrero de 2009, CD #1, pág. 12, Apéndice, Pieza 2, pág. 363.

 12 L.P.R.A. sec. 107(d).

 Esta disposición preceptúa que las Reglas de Evidencia no serán aplicables a las vistas administrativas pero que los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento.

 Transcripción de la vista administrativa del 29 de mayo de 2011, CD#2, pág. 26, Apéndice, Pieza 2, pág. 512.